THE STATE, DEFENDANT IN ERROR, v. LUIGI SCADUTO, PLAINTIFF IN ERROR.

Submitted December 8, 1906—Decided February 25, 1907.

1. Upon the trial of an indictment for manslaughter, where the defendant claims that the killing was in self-defence, and it has been proved in the case that the deceased and the defendant were in actual collision at the time of the killing, previous threats by the deceased against the defendant, although not communicated to the defendant, are competent evidence.

2. Under an indictment for manslaughter, a defendant cannot be convicted of the offence set forth in the fortieth section of the Crimes act.

On error to the Union Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and GARRETSON.

For the state, *Nicholas C. J. English,* prosecutor of the pleas.

For the defendant, *William R. Wilson.*

The opinion of the court was delivered by

GARRETSON, J. The defendant was convicted of manslaughter in the Union Quarter Sessions, and upon that conviction there was judgment of imprisonment at hard labor in the state's prison for the period of three years.

The plaintiff in error seeks to reverse the judgment for alleged errors in the reception of evidence and in the charge of the court.

It appeared in evidence that the defendant and the deceased, Lorenz Forci, were fish peddlers, and on the day of the killing were plying their business in Plainfield and happened to meet on the street, and engaged in a wordy quarrel, in which the deceased threatened to fix the defendant. They then separated, but met later on and went some distance together, when they engaged in an encounter, in which the deceased received a fatal stab wound from some sharp instrument and the defendant received a pistol shot wound in the mouth.

A number of witnesses testify as to seeing the deceased and the defendant engaged in a fight, as to the reports of two shots, the falling of the deceased and the going away of the defendant.

The defendant's testimony as to this part of the transaction is that the deceased pulled out his gun from his back pocket and shot at the defendant, who then grabbed him, and as they were clinched, the deceased shot the defendant in the right cheek, and as he shot him in the right cheek, the defendant saw the deceased had a stiletto, which he took and commenced stabbing the deceased. From those wounds the deceased died.

The defendant claims he acted in self-defence.

The first error assigned is to the refusal of the court to permit evidence to be given of threats made by the deceased against the defendant prior to the affray in which the deceased was killed, which threats were not communicated to the defendant.

It is stated as a general rule that threats by a deceased against a defendant not communicated to the defendant cannot be received in evidence on a trial of the defendant for killing the deceased. 21 *Cyc.* 819; 11 *Am. & Eng. Encycl. L.* (*2d ed.*) 505.

There seem, however, to be exceptions to this rule. It is thus stated. by Wharton (*Whart. Ev.* (*8th ed.*), § 757): "If such evidence is offered to prove that the defendant had

a right to kill the deceased, there being no proof of a hostile demonstration by deceased, then it is irrelevant. On the other hand, if the question is as to which party in the encounter is the assailant, then it is admissible to prove, by the prior declarations of the other, that the attack was one he intended to make. Threats to this effect by the defendant are always admissible, and it is properly held that there is equal reason, supposing a collision between the deceased and the defendant to be first proved, for the admission of threats by the deceased." It is true that by some courts it has been insisted that to make the deceased's threats prior to the encounter admissible, they must be proved to have been brought to the knowledge of the defendant. But it is difficult to understand the reason why an acquaintance by the defendant with the deceased's threats should strengthen the admissibility of such threats. If the deceased knew beforehand that his life was threatened, it might be argued that he should have applied to the law for redress. If he did not know, and was attacked without warning by the deceased, then proof of the deceased's hostile temper, whether such proof consists of preparations or declarations, is pertinent to show that the attack was made by the deceased. The question whether the defendant or the deceased was the aggressor in the fatal collision is to be determined, and if in such case deceased's threats are admissible to prove that deceased was the aggressor, defendant's threats, by the same reason, are admissible to prove that the defendant was the aggressor. For the purpose therefore, in cases of doubt, of showing that the deceased made the attack, and if so, with what motive, his prior declarations, uncommunicated to the defendant, that he intended to attack the defendant, are proper evidence. And so it has been frequently held. They are, however, inadmissible unless proof be first given that there was an overt act of attack and that the defendant at the time of the collision was in imminent danger. Wharton cites *Wiggins* v. *State, 93 U. S.* 465, and cases in Vermont, New York, Illinois, Indiana, North Carolina, Georgia, Alabama, Arkansas and California.

Confining the rule to cases in which there is evidence of an actual collision between the deceased and the defendant and defendant sets up self-defence, we think this evidence was competent, and should have been admitted.

The refusal to admit it was injurious error, and for that reason this judgment must be reversed.

The seventeenth assignment of error is "Because the court charged the jury that the defendant might be convicted under the fortieth section of the Crimes act."

Inasmuch as the defendant was convicted of manslaughter, a crime carrying with it a more severe penalty than that defined in the fortieth section, that part of the charge referred to in this assignment of errors was harmless, and standing alone would not authorize this court to reverse the judgment, but as it stands in connection with other errors for which the judgment must be reversed, a discussion of it is pertinent.

This assignment of error is based upon a general exception to the charge. It does not pretend to quote the part of the charge excepted to, as it should, but as we are able, upon reading the charge, to determine what is referred to, we conclude to consider it.

The court charged as follows: "But, gentlemen, if you find that he is not guilty of manslaughter—that is, that he did not use any more force than is necessary to protect himself in defending himself—then, under the indictment, there is another consideration which you can take.

"Our criminal law provides that if any two or more persons shall fight together, or shall commit, or attempt to commit, an assault and battery upon each other, or shall be present aiding, assisting, abetting, &c., each of them shall be guilty of a misdemeanor.

"If, after these two men had their wordy quarrel in the morning, they got together and had a fight, the law says that they are each of them guilty of assault and battery upon the other, and if you think that the state has not proved that this man is guilty of manslaughter, and you are satisfied from the evidence in the case that these two men went out there and had a fight, you will be justified, under the law and under the

indictment, in bringing in this defendant guilty of assault and battery. But if the dead man was the assailant, and the defendant only used the necessary force to enable him to get away from him, of course that would not be assault and battery on the part of the defendant. But if they got together to settle their quarrel by a fight, whether they were going to do it with weapons or with the weapons which nature alone gave them—that is, their fists—and each one struck the other, the law says that each of them is guilty of assault and battery. If you are not convinced of that (*i. e.,* that the defendant used more force than was necessary to protect himself), you can still convict him of assault and battery if you are satisfied that they got together for the purpose of settling their quarrel and had a fight." And at the end of the charge said: "If they got together to settle their difference by having a fight, and then did have a fight, then you can say that the defendant was guilty, under the fortieth section of the Crimes act, of assault and battery."

We think the court misconceived the effect of the fortieth section of the Crimes act. It is as follows (*Pamph. L.* 1898, *p.* 806) : "Any two or more persons who shall fight together, or shall commit, or attempt to commit, assaults and batteries upon each other, or shall be present aiding, assisting or abetting the same, either in public or a private place, shall be jointly guilty of a misdemeanor."

The indictment in this case contains two counts. The first count alleges that the defendant did feloniously kill and slay the deceased.

The second count alleges that the defendant did make an assault on the deceased with a sharp instrument, giving him a mortal wound, of which he died, and so did kill and slay him.

The offence aimed at in section 40, *supra,* seems first to have found place in our Criminal law as a separate offence in *Pamph. L.* 1875, *p.* 104, where it appears as section 1 in a supplement to the Crimes act of 1874, and section 2 of that supplement provides that upon the trial of any indictment for the offence or offences described above, the jury may

render a verdict of guilty or not guilty against any one or more persons charged in the said indictment. This supplement was repealed in 1898, and it does not appear that section 2 was re-enacted.

The offence defined in section 40 is a different offence from assault and battery, although assaults and batteries may be ingredients of it. One of the characteristics of this offence is that one person alone cannot commit it or be separately indicted for it. It is aimed against two or more, and the section says that the two or more who engage in it shall be "jointly" guilty of a misdemeanor.

It seems not unlikely that section 2 of the act of 1874 was purposely omitted from the act of 1898 because inconsistent with the first section of the act of 1874, for how could one person only be guilty of a crime which required at least two to commit?

If on the trial the defendant had made out a defence which entirely excused him of the crime of manslaughter, and so entitled him to an acquittal of that charge, and necessarily acquitted him of that assault and battery which is involved in the manslaughter, he could not be convicted of the assault and battery mentioned in the fortieth section, else he would be thus subjected to a penalty for an offence for which he had been acquitted.

If the offence defined in section 40 has resulted in the death of one of the parties engaged, the party which has caused the death must be held liable for manslaughter. He cannot be proceeded against alone for an offence which can only arise when participated in by two, at least if one of these participants is dead by the survivor's act.

Further, it would seem that under an indictment under the fortieth section the defendants could not set up self-defence as against each other. The offence of that section seems to arise out of a mutual agreement to fight together, and not the fight which may arise where one unjustifiably attacks another.

We have examined the other assignments of error, but do not find any substance in them.

The judgment below is reversed and a *venire de novo* awarded.