86 N.J. Super. 585 (1965)
207 A.2d 563
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GERALD JORDON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1965.
Decided February 26, 1965.
*587 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Irving Vogelman argued the cause for appellant (Mr. Raymond A. Brown, attorney).
Mr. Gregory K. Castano, Assistant Prosecutor, argued the cause for respondent (Mr. James A. Tumulty, Jr., Prosecutor, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant was charged in the Jersey City Municipal Court on the complaints of two police officers, with assault and battery (N.J.S. 2A:170-26) and with fighting (N.J.S. 2A:170-27). He was found guilty after a hearing and convicted. He thereupon took an appeal to the County Court, which conducted a trial de novo. At the close of the State's case the trial judge stated that he would entertain a motion to dismiss the assault and battery charge. Such a motion was made and the charge dismissed. After the defense had presented its witnesses, the trial judge concluded that defendant's guilt had been established beyond a reasonable doubt and imposed a sentence of 30 days in the county penitentiary. He suspended sentence and left defendant off with a warning, stating that he was not being placed on probation. Defendant appeals.
The charges originally brought against defendant stem from a street fight late on the evening of February 27, 1964, involving a large group of boys. Some 15 police were called out to quell the melee. Defendant and one Dean were taken *588 into custody; the other boys escaped. A radio car policeman testified Dean was in the midst of the fight; he and others were throwing punches, swinging their arms, grabbing at each other, and rolling on the ground. The other radio car officer saw Dean "swinging his arms and it looked like he was in a fight." This witness testified that defendant was also swinging his arms, but he could not identify the youths at whom he aimed his blows. None of the three officers who testified were able to identify anyone except Dean and defendant. Some six boys who had been with defendant that evening said he did not fight.
R.R. 1:5-4(b) provides that on a review of any criminal cause involving issues of fact not determined by a jury verdict, new or amended findings of fact may be made, "but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." However, we exercise that power only where we are well satisfied that the trial court's finding was a mistaken one and offends the interests of justice. State v. Moretti, 50 N.J. Super. 223, 237 (App. Div. 1958); State v. Catalano, 30 N.J. Super. 343, 348 (App. Div. 1954). Due regard must be given to the opportunity of the trial court  here the County Court  to judge of the credibility of the witnesses.
Meagre though the record is, we are unwilling to overrule the trial judge on this phase of the case, recognizing that he saw and heard the witnesses. In his oral conclusions he made specific reference to the fact that after weighing the testimony and judging the credibility of the witnesses, he was satisfied that the State had established guilt beyond a reasonable doubt, not only in defendant's case, but in that of Dean, who also received a 30-day suspended sentence.
Defendant's second and final ground of appeal involves an interpretation of N.J.S. 2A:170-27, which reads:
"Any 2 or more persons who fight together, or commit or attempt to commit assaults and batteries upon each other, either in public or in a private place, or are present, aiding, assisting or abetting same, are jointly disorderly persons."
*589 Defendant contends that under the statute he and the person with whom he was fighting should have been jointly charged and tried for the offense, and in such case there would have to be a joint verdict of guilt.
The specific offense of fighting appeared in our statute books for the first time in 1875. At common law fighting was considered a species of affray. Blackstone, in 4 Commentaries, c. 9 (1769), dealing with offenses against the public peace said:
"Affrays (from affraier, to terrify) are the fighting of two or more persons in some public place, to the terror of his majesty's subjects: for, if the fighting be in private, it is no affray but an assault. * * * The punishment of common affrays is by fine and imprisonment; the measure of which must be regulated by the circumstances of the case; for, where there is any material aggravation, the punishment proportionably increases. * * * Two persons may be guilty of an affray: * * *." (at pages 145-6)
He distinguishes affrays from riots, routs and unlawful assemblies. And see 1 Hawkins, Pleas of the Crown 134 (1716-21); 1 Bishop, Criminal Law (9th ed. 1923), § 535, pp. 394-5; 1 Russell on Crimes (Sharswood ed. 1877), p. 405 et seq.; 2 Wharton, Criminal Law and Procedure (Anderson ed. 1957), § 844, p. 716 et seq.; 12 Am. Jur.2d, Breach of Peace and Disorderly Conduct, § 18, p. 678 et seq. (1964); 2 C.J.S., Affray, § 1 et seq., p. 997 et seq. (1936).
In 1875 the Legislature adopted a supplement (L. 1875, c. 442, p. 104) to the Crimes Act of 1874. Section 1 provided:
"That if any two or more persons shall fight together, or shall commit or attempt to commit assaults and batteries upon each other, * * * either in a public or a private place, in this state, they shall be guilty of a misdemeanor and may be jointly indicted, and be punishable in the same manner and to the same extent as persons are now punishable by law upon a conviction for assault and battery."
And section 2 provided:
"That upon the trial of any indictment for the offense or offenses described above, the jury may render a verdict of guilty or not guilty against any one or more persons charged in the said indictment."
*590 It will at once be noted that it was possible to construe the 1875 act as permitting the separate indictment and trial of any participant in a fight  the language of section 1 is "may be jointly indicted." The law was repealed after a re-study of the entire body of our criminal law and adoption of the Crimes Act of 1898. See L. 1898, c. 236.
The drafters of the 1898 act corrected the loose language of the 1875 statute so as clearly to indicate the joint character of the crime. L. 1898, c. 235, § 40 provided:
"Any two or more persons who shall fight together, or shall commit or attempt to commit assaults and batteries upon each other, * * * either in public or a private place, shall be jointly guilty of a misdemeanor."
This language was carried over into the Revision of 1937, as R.S. 2:110-4. The offense was reduced from a misdemeanor to a disorderly persons act when Title 2 was revised following the adoption of the 1947 Constitution of New Jersey. N.J.S. 2A:170-27 provides that participants in a fight "are jointly disorderly persons."
Section 40 of the Crimes Act of 1898 was discussed in State v. Scaduto, 74 N.J.L. 289 (Sup. Ct. 1907). Defendant there was indicted and convicted of manslaughter. He and one Forci had met on the street and engaged in a wordy quarrel, in the course of which decedent threatened to "fix" defendant. They separated, met again later, and had a fight in which decedent was fatally stabbed. The first error assigned on appeal was the trial court's refusal to permit evidence to be given of threats made by decedent prior to the affray. The appellate court found this evidence to be competent, holding that the refusal to admit it was error which required reversal. Although this ordinarily would have concluded the appeal, the court considered another assignment of error significant enough to warrant extended discussion.
The trial judge in Scaduto had instructed the jury that if it found defendant not guilty of manslaughter then, under the indictment, it could consider another matter. He charged:
*591 "Our criminal law provides that if any two or more persons shall fight together, or shall commit, or attempt to commit, an assault and battery upon each other, or shall be present aiding, assisting, abetting &c., each of them shall be guilty of a misdemeanor.

* * * * * * * *
* * * But if they [defendant and decedent] got together to settle their quarrel by a fight, whether they were going to do it with weapons or with the weapons which nature alone gave them  that is, their fists  and each one struck the other, the law says that each of them is guilty of assault and battery. * * *"
At the close of the charge the trial judge made clear what law he meant, for he referred to the 40th section of the Crimes Act of 1898.
The appellate court which decided Scaduto was composed of three judges well versed in the common law: Chief Justice Gummere and Justices Garrison and Garretson. The court held that the trial judge had misconceived the effect of section 40. After quoting the section and referring to the antecedent 1875 law, the court pointed out that the offense defined in section 40 was different from assault and battery, although assaults and batteries might be ingredients of it.
"* * * One of the characteristics of this offence is that one person alone cannot commit it or be separately indicted for it. It is aimed against two or more, and the section says that the two or more who engage in it shall be `jointly' guilty of a misdemeanor.
It seems not unlikely that section 2 of the act of 1874 [1875] was purposely omitted from the act of 1898 because inconsistent with the first section of the act of 1874 [1875], for how could one person only be guilty of a crime which required at least two to commit?" (at page 294)
The court said that if, at the trial, defendant had made out a defense which excused him of the crime of manslaughter and so entitled him to an acquittal of that charge, he necessarily would have to be acquitted of the assault and battery involved in the manslaughter; he could not be convicted of the assault and battery mentioned in section 40. The court continued:
"If the offence defined in section 40 has resulted in the death of one of the parties engaged, the party which has caused the death must be *592 held liable for manslaughter. He cannot be proceeded against alone for an offence which can only arise when participated in by two, at least if one of these participants is dead by the survivor's act.
Further, it would seem that under an indictment under the fortieth section the defendants could not set up self-defence as against each other. The offence of that section seems to arise out of a mutual agreement to fight together, and not the fight which may arise where one unjustifiably attacks another." (at page 294)
Although all that was said in Scaduto regarding section 40 was obviously dictum, it was dictum of the highest order in view of the composition of the court and the extended attention it gave to what it considered the proper construction of that provision of the Crimes Act of 1898.
The language of that act in defining the crime of fighting ("shall be jointly guilty of a misdemeanor")  language carried over into the Revision of 1937  and the language now contained in N.J.S. 2A:170-27 ("are jointly disorderly persons") is significant. As at common law, so now, the offense of fighting cannot be committed singly, but requires the participation of two or more persons jointly. We consider the statutory language as requiring that the participants be charged jointly where they can be identified, and those not identifiable may be referred to as John Doe, Richard Roe, etc., whose true names are unknown.
It is, of course, familiar law that a statute penal in nature must be strictly construed and applied. Here, however, there was no objection to the form of the complaint, either in the municipal court or on appeal to the County Court. Both at the original hearing before the magistrate and at the de novo hearing in the County Court, attention was in the main directed to the question of whether the evidence established defendant's guilt beyond a reasonable doubt.
The original complaint charged that defendant, on February 22, 1964, in Jersey City, "did engage in a street fight with divers other persons  in all numbering about 14, in a public place, Armstrong and Ocean Avenue," in violation of N.J.S. 2A:170-27. It is entirely clear that the 14 other persons were unknown to and unidentifiable by the *593 police  they had fled the scene. Had the complaint been more artistically drawn, it would have noted that these 14 were unknown and then, perhaps, would have run the gamut of the alphabet in assigning fictitious names to them. However, we do not consider this omission as rendering the complaint fatally defective. There was not such plain error here as affected defendant's substantial rights or prejudiced him in maintaining his defense upon the merits. R.R. 1:5-1(a). His defense was, quite simply, that he did not participate in any fight, and the witnesses he produced were for the purpose of establishing the truth of that claim.
R.R. 1:5-1(b) directs that no judgment given upon any indictment "shall be reversed for any imperfection, omission, defect or lack of form, or for any error except such as shall have prejudiced the defendant in maintaining his defense upon the merits." We need only substitute "complaint" for "indictment" in applying the rule to the facts of this case.
Further, R.R. 3:10-10(b) provides that an appeal to the County Court shall operate as a waiver of all defects in the record, including any defect in, or the absence of any process or charge laid in the complaint  the single exception being lack of jurisdiction in the municipal court. State v. Osborn, 32 N.J. 117, 121-2 (1960); State v. Hulsizer, 42 N.J. Super. 224, 228 (App. Div. 1956). The municipal court, of course, has specifically been given jurisdiction over disorderly person offenses contained in Title 2A, subtitle 12 (N.J.S. 2A:169-1 et seq.) by N.J.S. 2A:8-21(d).
Accordingly, the judgment of conviction is affirmed.