## Commonwealth *vs.* Paul Revells.

No. 09-P-888.

Berkshire. October 13, 2010. - December 28, 2010.

Present: Kantrowitz, Kafker, & Wolohojian, JJ.

*Evidence,* First complaint. *Practice, Criminal,* Assistance of counsel. *Constitutional Law,* Assistance of counsel.

Discussion of the application of the first complaint doctrine. [495]

At a rape trial, there was no error in the admission of testimony by the victim's mother as the first complaint witness, where the victim's first complaint to her mother, which included a letter, consisted of a single, tightly intertwined oral and written communication [495-496]; further, given that the letter itself, although unable to be produced at trial, was not a separate complaint, but part and parcel of the entire communication to the mother, and there was no dispute regarding its absence, the best evidence rule did not preclude the mother's testimony regarding the letter's contents without express best evidence findings by the judge [496-497].

At a rape trial, the erroneous admission in evidence of testimony by the victim on direct examination regarding her complaints, beyond her first complaint to her mother, to a doctor and to the police, did not create a substantial risk of a miscarriage of justice. [497-499]

The failure by a criminal defendant's counsel to file a motion to suppress statements the defendant made to the police did not constitute ineffective assistance, where nothing in the appellate record suggested that the defendant would have been able to show that the statements should have been suppressed. [499-500]

Indictments found and returned in the Superior Court Department on October 18, 2007.

The cases were tried before *John A. Agostini,* J., and a motion for a new trial was heard by him.

*Derege B. Demissie* for the defendant.

*Karen L. Carlo,* Assistant District Attorney, for the Commonwealth.

Kafker, J. The defendant, Paul Revells, was convicted of four counts of rape of a child with force, G. L. c. 265, § 22A, after a

jury trial in the Superior Court Department. He subsequently filed a motion for a new trial. On appeal from his convictions and from the denial of his motion for a new trial, he primarily claims error in the admission of testimony under the first complaint doctrine. We affirm.

*Background.* We relate the testimony presented at trial as it pertains to the issue of the first complaint doctrine. The victim testified as the Commonwealth's first witness.[1] She provided a detailed description of the defendant's rapes and sexual abuse of her over a number of years. At the end of direct examination, the victim was asked: "Did you tell the doctor what the Defendant had been doing to you?" The victim replied, "[Y]es." Next, the victim was asked: "Before you went to the doctor, did you explain to the police what the Defendant had been doing to you?" The victim replied, "[Y]es." Lastly, the victim was asked: "Did you tell the police essentially everything that you told the jury here today?" The victim replied, "[Y]es."

At trial, the mother, who testified as the first complaint witness, stated that on August 23, 2007, the victim made her first disclosure that the defendant had sexually abused her over five years, beginning at age nine. The defendant was the mother's boy friend. As the victim attempted to disclose what had occurred, she began stuttering and was unable to continue. The mother testified that she then asked the victim to write down what she was trying to say. While the victim was writing the mother a letter, the defendant knocked on the door and asked to come inside. Although the victim asked her mother to refuse to let the defendant inside, the mother allowed the defendant to come in for a short time. Upon the defendant leaving the home, the mother read her daughter's letter. The mother testified that in the letter, the victim reported that the defendant "had started hurting her when she was nine, that he would sneak into her bedroom while I was sleeping and he would hurt her repeatedly." The mother further explained that according to the letter, the defendant was hurting her "sexually." The letter also stated that the defendant had threatened to kill the other members of the family if the victim told anyone. The mother also testified that

---

[1]The victim, her mother, the investigating police detective, and the doctor who examined the victim were the witnesses for the Commonwealth at trial.

the letter concluded by stating that the victim was scared to tell anyone because she knew her mother was in financial trouble and might not be able to deal with the information, but could no longer stay quiet and knew the mother could now help her, because the victim had seen the mother "wrestling with [the defendant]."

After reading the letter, the victim's mother went to the defendant's home and confronted him with the letter. The defendant denied the allegations contained in the letter, and the two returned to the mother's house to confront the victim. The mother testified that the victim became upset and ran upstairs. Following this confrontation, the mother testified that she had not seen the letter since it was in the defendant's possession. The defendant testified that although he placed the letter on a shelf at the mother's home, no one had seen the letter afterwards.

*First complaint.* The defendant argues that the judge committed reversible error in admitting testimony in violation of the first complaint doctrine. More specifically, the defendant, relying on *Commonwealth* v. *Stuckich*, 450 Mass. 449 (2008), claims reversal is required because (1) the letter itself is the first complaint and therefore the mother's testimony should not have been admitted; (2) the trial judge failed to hold a voir dire hearing to determine who, or what, comprised the first complaint; and (3) the trial judge erred in allowing the victim to testify that she told multiple people about the allegations.

When the Commonwealth proposed the mother as the first complaint witness in its motion to admit first complaint testimony that the judge considered before the commencement of trial, defense counsel made what he referred to as an "academic objection." He argued that the letter was the first complaint but "[u]nfortunately . . . the letter disappeared." He also stated that he was "satisfied that [the prosecutor] has made reasonable efforts to [find the letter]." Nonetheless before trial he continued to object to the mother's testimony on the issue of best evidence. The prosecutor stated that "[the mother's] testimony simply would be that she saw the letter and in that letter it indicated that her daughter had been abused by the defendant over the past several years . . . and that he threatened, if she told, to hurt her family." Defense counsel then appeared to withdraw

his objection, saying: "That would address my only real concern." No objections were raised once the trial began.[2]

In *Commonwealth* v. *King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006), the Supreme Judicial Court moved from a fresh complaint to a first complaint doctrine. The court determined: "It is the alleged victim's first complaint, the point at which the accusation first surfaced, that is the most pertinent to the jury's understanding of what motivated the victim to come forward and is the most useful in assessing the victim's credibility (including assessing any specific defense theories attacking that credibility)." *Id.* at 243. Therefore, the court limited first complaint "testimony to that of one witness — the first person told of the assault." *Ibid.* In so holding, the court further explained that "[t]he testimony of multiple complaint witnesses likely serves no additional corroborative purpose, and may unfairly enhance a complainant's credibility as well as prejudice the defendant by repeating for the jury the often horrific details of an alleged crime." *Ibid.*

As part of its concentration of attention on the first complaint, the court later stated that the "complainant, as well as the first complaint witness, may testify as to the details of the complaint itself and why the complaint was made at that particular time." *Commonwealth* v. *McCoy*, 456 Mass. 838, 845 (2010). The first complaint witness may testify as to "his or her observations of the complainant during the complaint; the events or conversations that culminated in the complaint; the timing of the complaint; and other relevant conditions that might help a jury assess the veracity of the complainant's allegations or assess the specific defense theories as to why the complainant is making a false allegation." *King, supra* at 246.

With these principles in mind, we discern no error in allowing the mother's testimony in the instant case. There was no question that she was the first complaint witness. Her complete description of the victim's report to her also allowed a fuller assessment of the victim's veracity. The defendant nonetheless argues that *Stuckich* allows only the introduction of the letter the victim wrote, not the mother's testimony. *Stuckich,* however, is readily distinguishable.

---

[2]The objection was not, therefore, preserved.

In *Stuckich*, the complainant sent a letter to her school guidance counselor, who was presented as the first complaint witness at trial, alleging that she had been sexually assaulted. The letter stated that she had recently told her mother about the abuse and that the mother had reported the disclosure to her daughter's therapist. Later communication from the complainant put into question whether her mother had been told before the letter was sent to the guidance counselor. As a result, there was a difficult, unresolved issue about who the first complaint witness was, thereby requiring a voir dire. As a consequence, the convictions had to be reversed. *Stuckich, supra* at 455-456. Here, there is no such factual dispute and no need for a voir dire to resolve who the first complaint witness was.

The court in *Stuckich* did, however, state that "[i]f, in fact, the letter was the first complaint, that is the end of the matter. The letter would be the first complaint evidence and the further disclosures are not admissible as first complaint evidence." *Stuckich, supra* at 456. In the instant case, the letter was not a separate complaint, such as a letter written on one day and discussed on another. Rather, the victim's first complaint to her mother consisted of a single, tightly intertwined oral and written communication. The letter was written at the mother's request after the victim was initially unable to verbally articulate her complaint. As soon as it was written, it was given to the mother. There was no meaningful gap in time between the written and oral aspects of the communication of the complaint. Consequently, the entire communication to the mother was the first complaint and was properly admitted "to give the jury as complete a picture as possible of how the accusation of sexual assault first arose." *King, supra* at 247.

We next address the defendant's contention that the mother should not have been allowed to testify about the letter itself, because such testimony violated the best evidence rule. "The best evidence rule provides that, where the contents of a document are to be proved, [a] party must either produce the original [document] or show a sufficient excuse for its nonproduction." *Commonwealth* v. *Ocasio*, 434 Mass. 1, 6 (2001) quoting from Liacos, Massachusetts Evidence 746 (7th ed. 1999). See Mass. G. Evid. § 1002 (2010 ed.). However, "where the original has

been lost, destroyed, or otherwise made unavailable, its production may be excused and other evidence of its contents will be admissible, provided that certain findings are made." *Ocasio, supra*. Those findings relate to the original existence of the document, its loss, its destruction, or its unavailability "otherwise than through the serious fault of the proponent . . . and that reasonable search had been made for it." *Fauci* v. *Mulready*, 337 Mass. 532, 540 (1958).

The letter, as previously explained, was not a separate complaint but part and parcel of the entire communication to the mother. Moreover, the letter's existence and its basic contents were not disputed, as both the mother and the defendant so testified. Nor apparently was there any dispute about the loss of the letter, about the absence of serious fault of the Commonwealth for its loss, or that a reasonable search had been undertaken for it. Whether the allegations in the letter were true was in dispute, but first complaint testimony is "not offered to prove the truth of the matter asserted"; rather it is "an exception to the usual rule that a prior statement of a witness concerning a material fact that is consistent with the witness's trial testimony may only be admitted on redirect examination." *King, supra* at 241 n.21 (citations omitted). In these circumstances, the best evidence rule does not preclude the testimony of the mother regarding the letter's contents without express best evidence findings by the judge.

The defendant next argues that the victim should not have been allowed to testify on direct examination regarding complaints beyond the first complaint, specifically her complaints to the doctor and police, because this constituted prejudicial "piling on." Because the defendant did not object to the victim's testimony about her reports to third parties, we must decide whether the testimony was properly admitted and, if not, whether the testimony created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 17 (1999).

"In analyzing a claim under the substantial risk standard, we review the evidence and case as a whole and ask four questions: '(1) Was there error? . . . (2) Was the defendant prejudiced by the error? . . . (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error

materially influenced the verdict? . . . (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?' *Commonwealth* v. *Randolph*, 438 Mass. 290, 298 (2002)." *McCoy*, 456 Mass. at 850.

We conclude that there was error in the admission of this evidence. Although the testimony was brief — less than a page of transcript — it violates the guidance of *Stuckich*. "In the *Stuckich* decision, the Supreme Judicial Court explained that the prohibition on the admission of complaint evidence beyond that presented by the designated first complaint witness extends to testimony concerning the fact of additional reports, even if that testimony does not contain a detailed account of the victim's allegations." *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. 489, 493 (2009), quoting from *Stuckich, supra* at 457. Here, in addition to testifying that her mother was the first complaint witness, the victim testified on direct examination that she told her doctor about the alleged abuse. No specifics were discussed. The victim further testified that she told the police essentially everything she told the jury during her direct examination.[3] This testimony, therefore, should not have been admitted under the first complaint doctrine.[4] *McCoy, supra* at 848.

Here, the defendant was not prejudiced by the testimony. The statement regarding the doctor was a passing reference. See *Commonwealth* v. *Kebreau*, 454 Mass. 287, 298 (2009) (albeit error under first complaint doctrine, "brief mention" of call to Department of Social Services did not create a substantial risk of miscarriage of justice). Even without the testimony, the jury could have reasonably inferred that the doctor, who performed the pelvic exam and who testified at trial, would have been informed by the victim of the allegations.[5]

More troublesome is the comment regarding the police, par-

---

[3]The officer testified that the police investigation began when the victim "reported that she had been sexually assaulted by [the defendant] over a number of years, a number of times." A videotape of the sexual abuse intervention network (SAIN) interview was also introduced by the defendant during his cross-examination of the victim.

[4]We note that the Commonwealth did not provide any other legitimate purpose for the testimony. *Commonwealth* v. *Arana*, 453 Mass. 214, 224 (2009).

[5]The doctor who performed the pelvic exam testified that the victim's

ticularly the statement to the effect that she told the police "everything that you told the jury here today." As the testimony, elicited by the prosecutor, involves self-corroboration by the witness and "creates the imprimatur of official belief in the victim," it is unquestionably error. *McCoy*, 456 Mass. at 846. See *Stuckich* at 457.

Defense counsel, however, raised the issue of the victim's statement to the police in his opening statement, describing the victim as a disturbed child who lied to avoid getting in trouble and who would now attempt to convince the jury that "what she said to the police is true." See *Commonwealth* v. *Mendez*, 77 Mass. App. Ct. 905, 906 (2010) ("defense counsel 'opened the door in opening argument' " to additional complaint evidence). Additionally, the defendant successfully pointed out inconsistencies between the victim's trial testimony and what the victim said during her sexual abuse intervention network (SAIN) interview, a portion of which was played during her cross-examination. "Where the inconsistencies contained in the cumulative first complaint testimony were more important to the defense than the Commonwealth, there is no harm to the defendant." *McCoy, supra* at 851. Finally, the single statement also contained no repetition of the horrific details of the abuse, nor was it part of "a parade of multiple complaint witnesses." *Stuckich, supra* at 457 n.11. *McCoy, supra* at 851-852; *Mendez, supra* at 906. Although the victim's two statements should not have been elicited by the Commonwealth, we conclude that, in these particular circumstances, the defendant was not prejudiced by the error.

*Ineffective assistance of counsel.* In conjunction with his appeal from the denial of his motion for a new trial, the defendant claims that his trial counsel was ineffective. To prove ineffective assistance of counsel, a defendant must show that the "behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer," depriving the defendant of a "substantial ground of defence." *Commonwealth*

"mother brought her in urgently." The doctor was then questioned as follows: "Without telling us what [the victim] said, did she explain something had been occurring to her?" The doctor responded, "Yes." The doctor then explained that "When a patient comes in, you get the history . . . everything that's going on with the patient."

v. *Saferian*, 366 Mass. 89, 96 (1974). "A defense counsel's strategic decisions do not amount to ineffective assistance of counsel unless they are 'manifestly unreasonable.' " *Commonwealth* v. *Bousquet*, 407 Mass. 854, 863-864 (1990), quoting from *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979).

We see no basis for the defendant's claim that his counsel was ineffective in failing to file a motion to suppress statements he made to the police. Nothing in the appellate record suggests that the defendant would have been able to show the statements made to the police should have been suppressed, and therefore, we cannot conclude the defendant was deprived of a "substantial ground of defence." *Saferian, supra.*

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*