## Commonwealth *vs.* Matthew Nee.

No. 11-P-1952.

Suffolk. February 5, 2013. - March 19, 2013.

Present: Grasso, Brown, & Green, JJ.

*Affray. Practice, Criminal,* Instructions to jury, Argument by prosecutor, Assistance of counsel. *Constitutional Law,* Assistance of counsel, Vagueness of statute. *Due Process of Law,* Vagueness of statute.

Discussion of the history and elements of the common-law crime of affray. [444-445]

At a criminal trial, the evidence was sufficient to convict the defendant of the common-law crime of affray, where a witness's testimony established that the defendant was fighting together with other persons in a park to the terror of persons lawfully there; where nothing in the legislative definition of "affray" required that the fighting together of two or more persons be by agreement or design of all the participants, including those who may be set upon; and where the lawfulness of the victim's presence in the park together with his companions did not encompass the alleged unlawfulness of their purpose there. [445-447]

At the trial of a complaint charging the defendant with the common-law crime of affray, the judge's erroneous omission of the words "lawfully there" in an instruction to the jury did not give rise to a substantial risk of a miscarriage of justice, where there was no reasonable doubt that the individuals placed in fear by the fighting of the defendant and his cohort were lawfully present in the park in question [447-448]; further, the prosecutor, in closing argument, did not misstate the evidence, seek to inflame and confuse the jury, or improperly elicit sympathy by reference to the severity of the victim's injuries [448-449]; finally, defense counsel was not ineffective for failing to object to the jury instructions or the prosecutor's closing argument [449].

The common-law crime of affray was not unconstitutionally vague as applied to the defendant, where a person of common intelligence would have little difficulty understanding that one who was part of a group that engaged in a coordinated and sustained physical attack on individuals lawfully present in a public park and caused them terror committed affray. [449-450]

Complaint received and sworn to in the South Boston Division of the Boston Municipal Court Department on November 15, 2010.

After transfer to the Central Division of the Boston Municipal Court Department, the case was tried before *Eleanor C. Sinnott, J.*

*Madeline Weaver Blanchette* for the defendant.

*Allison Callahan*, Assistant District Attorney, for the Commonwealth.

GRASSO, J. A jury found the defendant guilty of affray, a common-law crime of ancient vintage not previously examined in our appellate jurisprudence.[1] On appeal from his conviction,[2] the defendant argues (1) the proof was insufficient, (2) the jury instruction was erroneous, (3) the prosecutor's closing argument was improper, (4) defense counsel rendered constitutionally ineffective assistance, and (5) the crime of affray is unconstitutional as applied to him. We affirm.

*Background.* Viewed in the light most favorable to the Commonwealth, see *Commonwealth v. Latimore*, 378 Mass. 671, 676-677 (1979), the jury could have found the following. On the evening of November 12, 2010, John Monaco, a Harvard University police officer, attended a football game in Boston between St. John's Preparatory School and Boston College High School. After the game, Monaco, who used to coach at St. John's, went to the Boston Beer Garden in the South Boston neighborhood of Boston for dinner and drinks with a few friends, including Pat Marks, Michael Pitt, and Vincent Miserendino. They arrived around 10:00 P.M. and left around 11:45 P.M.

After leaving the restaurant, Monaco waited on the sidewalk

---

[1]Our decisions note convictions of affray in passing, see, e.g., *Commonwealth v. Gorman*, 288 Mass. 294, 298 (1934), and *Commonwealth v. Cook*, 371 Mass. 832, 833 (1977), but we are aware of no reported case that examines a challenge to a conviction. See also *District Attorney for the Norfolk Dist.* v. *Quincy Div. of the Dist. Ct. Dept.*, 444 Mass. 176, 178-181 (2005). Decisions in other States do not offer much interpretative assistance, as they consist largely of dated case law and discussions of codifications of the common-law crime. See, e.g., *Johnson* v. *State*, 135 Ga. App. 360, 361-362 (1975); *State* v. *Renda*, 125 Me. 451, 452-453 (1926); *State* v. *Jordon*, 86 N.J. Super. 585, 588-592 (1965); *State* v. *Fritz*, 133 N.C. 725, 727-728 (1903); *Matter of May*, 357 N.C. 423, 425-428 (2003); *Pollock* v. *State*, 32 Tex. Crim. 29, 32-33 (1893). See generally 12 Am. Jur. 2d Breach of Peace and Disorderly Conduct § 17 (2009); 2A C.J.S. Affray §§ 1, 4, 6, 9, 11, 12, 22 (2003).

[2]The jury found the defendant not guilty of assault and battery by means of a dangerous weapon, assault and battery, and assault.

for Miserendino, the designated driver, to return with the car. As Miserendino approached, Monaco began walking down the sidewalk in his direction. At the same time, a young man in a white sweatshirt and white hat entered the sidewalk. Monaco and the young man bumped into each other as they passed, and Monaco offered an apology. In response, the young man threw a punch that hit Monaco in the left side of his head.

Monaco reacted by grabbing the young man's sweatshirt. As he did, another young man, taller and darker in complexion, approached Monaco and said, "What are you doing? He's only a little kid." Monaco responded, "He just took a swing at me." In a matter of seconds, Monaco found himself surrounded by ten or so individuals. Marks, who was now on the scene, tried to assist Monaco by moving into the swelling group. Sensing the situation was getting out of hand, Monaco stepped next to some parked cars and said, "What are you guys doing? I'm a police officer. . . . I'm going to call 9-1-1." With that announcement, the group, now numbering about ten to fifteen, started running in the direction of the M Street Park, a public park (the park).

Although Monaco had sustained no physical injury, he called 9-1-1 on his cellular telephone to report the assault. Meanwhile, Marks and Pitt chased after the group. Monaco followed, talking to a State police dispatcher as he proceeded. After walking about a block, Monaco came to the park. There, he observed Marks and Pitt surrounded by a group of young people. Marks, Pitt, and the youths were yelling back and forth.[3] The group, which ranged in age from fifteen to eighteen, was larger in number than before and included both the young man who had assaulted Monaco earlier and the taller young man who had intervened.

Monaco entered the park intending to detain his recent assailant until the police arrived. As he did, he was set upon and hit from all sides. Monaco "blacked out" for an instant, and next became aware that blood was pouring from his nose, which was broken. As he looked up, he saw the blue lights of a police cruiser entering the park.

Although Monaco could not identify any of his assailants,

[3]During that encounter one of the youths removed a belt, snapped it at Marks's face, and said, "You're gonna get it."

Pitt, who was himself engaged in fending off members of the group, observed three or four of them kicking Monaco as he lay on the ground. In particular, Pitt saw one of them, later identified as the defendant, rise up over Monaco with a fist to strike him in the head. Pitt ran over, tackled the defendant, and wrestled him to the ground. As Pitt struggled with the defendant and held on to his waist, the blue lights of an arriving police cruiser caused the young people to scatter. Only the defendant, restrained by Pitt, remained.

Boston police Officer Edward Curley was one of the first officers to arrive. He separated Pitt and the defendant and began his investigation into the melee. Curley observed the injury to Monaco's nose, but no injuries to the defendant. After speaking with Monaco and Pitt, Curley arrested the defendant.

*Discussion.* The crime of affray traces its pedigree to British common law. "An Affray is a publick offense to the terror of the King[']s subjects, and . . . so called, because it affrighteth and maketh men afraid . . . ." 3 Coke, Institutes *158. See also 4 Blackstone, Commentaries *145 (fighting in public place "to the terror of his majesty's subjects" is offense against public peace). No less now than historically, affray is an offense against the public, an aggravated disturbance of the public peace that arises when two or more people fight in public and cause terror to those present. See *State* v. *Weekly*, 29 Ind. 206, 207 (1867). Whether at common law, or by codification, in most jurisdictions the essential ingredients of affray are: (1) fighting by or between two or more persons, (2) in some public place, (3) so as to cause alarm to the public. See *Gamble* v. *State*, 113 Ga. 701, 702-703 (1901).

General Laws c. 277, § 39, provides in pertinent part, "The following words, when used in an indictment, shall be sufficient to convey the meaning herein attached to them: . . . Affray. — Fighting together of two or more persons in a public place to the terror of the persons lawfully there." As a result of Part II, c. 6, art. 6, of the Massachusetts Constitution, which carried into effect the common law of England, including common-law crimes, until altered or repealed by the Legislature or declared invalid by the court, see, e.g., *Commonwealth* v. *Chapman*, 13 Met. 68 (1847), affray remains a common-law crime, but with a

definitional overlay adding the requirement that the persons to whom terror is caused be "lawfully there."[4] See *Commonwealth v. Jarrett*, 359 Mass. 491, 494-495 (1971) (statute that defines common-law crime does not make crime statutory). Despite its ancient provenance, neither the Supreme Judicial Court nor this court has examined the crime of affray in a reported decision either before or after the Legislature's addition of a statutory definition. See St. 1899, c. 409, § 12; R.L. 1902, c. 218, § 38. Against this backdrop, we consider the specific challenges raised by this defendant.

1. *Sufficiency of evidence.* At trial, the defendant maintained the evidence was insufficient to establish the identity of the individual who struck the blows that injured Monaco. More particularly, the defendant argued that it was the young man in the white sweatshirt, not he, who attacked Monaco.[5] On appeal, the defendant's insufficiency claim follows a slightly different tack. He argues that the Commonwealth's proof was insufficient to establish that the defendant was "fighting," and caused terror to someone "lawfully there," necessary components of affray. Whether we view the defendant's appellate claim as preserved error, or review it for a substantial risk of a miscarriage of justice, we discern no insufficiency of evidence. See *Commonwealth v. McGovern*, 397 Mass. 863, 867-868 (1986) (findings based on legally insufficient evidence create substantial risk of miscarriage of justice).

Pitt's testimony alone suffices to establish that the defendant engaged in an affray — fighting together with other persons in the park to the terror of persons lawfully there. Pitt observed the defendant in the group of three or four youths kicking Monaco as he lay on the ground and rising above Monaco's body to strike him with a fist. Pitt was sufficiently alarmed to tackle the defendant, wrestle him to the ground, and hold him until the

---

[4]Because the defining statute does not provide for a specific punishment, upon a conviction, "the court shall impose such sentence, according to the nature of the crime, as conforms to the common usage and practice in the commonwealth." G. L. c. 279, § 5. The defendant received a suspended sentence with an eighteen-month probationary period.

[5]As previously noted, the jury acquitted the defendant of assault and battery by means of a dangerous weapon, assault and battery, and assault upon Monaco.

police arrived notwithstanding punches and kicks directed at him by others in the group.

Whether the defendant was "fighting" does not merit serious discussion. " 'Fighting' is descriptive of conduct which by its very nature involves the use of physical force or violence or any threat to use such force or violence if that threat is objectively possible of immediate execution." *Commonwealth* v. *Sinai*, 47 Mass. App. Ct. 544, 548 (1999). Likewise, the evidence sufficed to establish that the defendant was one of two or more persons fighting "together" in a public place, to the terror of persons lawfully there. The defendant, the youth in the white sweatshirt, the tall youth with dark skin, and ten or more others formed together to attack Monaco, Pitt, and Marks, who were lawfully present in a public park. That the defendant and his group caused terror to Monaco, Pitt, and Marks by surrounding and attacking them is reasonably inferable from the evidence, including Mark's attempt to come to Monaco's aid. See *Commonwealth* v. *Lao*, 443 Mass. 770, 779 (2005). See also *Carwile* v. *State*, 35 Ala. 392, 394 (1860) (injury to public peace arises not so much from terror actually produced as likelihood of fighting in public place to produce it).

We discern nothing in the legislative definition of "affray" that requires the "fighting together of two or more persons" be by agreement or design of all the participants, including those who may be set upon.[6] See *Commonwealth* v. *Deberry*, 441 Mass. 211, 215 (2004), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934) ("We interpret a statute 'according to the intent of the Legislature ascertained from all its words construed in the ordinary and approved usage of the language . . . to the end that the purpose of its framers may be effectuated' "). Rather, it is also sufficient that the "fighting together" be by agreement of two or more individuals who undertake to set upon others. See *State* v. *Renda*, 125 Me. 451, 452 (1926) (not essential at common law that fighting be by consent of parties concerned). No less now than historically,

---

[6]See, e.g., *Childs* v. *State*, 15 Ark. 204, 205 (1854) ("All the persons committing an affray, whether it ensues upon a sudden quarrel or a feud, are supposed to engage in or encourage it, with a mutual or common design, to fight or make a disturbance").

affray is an injury to the public peace rather than to parties engaged in the fighting, and so long as two or more persons are engaged in the same combat, whether they are fighting on the same or opposing sides is immaterial to the terror caused to the public. The promiscuous attack by the defendant and his group upon Monaco, Pitt, and Marks satisfies the "fighting together of two or more persons" element.

We reject the defendant's contention that Monaco, Marks, and Pitt were not "lawfully present" in the park because they followed the group intending to extract revenge for the earlier assault upon Monaco. The defendant mistakenly conflates the lawfulness of Monaco's, Marks's, and Pitt's presence with the alleged unlawfulness of their purpose. "Lawfully present" for purposes of affray encompasses the lawful right to be present in the public place, not the purposes of those lawfully present there. It was undisputed that Monaco, Pitt, and Marks were lawfully in a public park, and nothing in the evidence raised a reasonable doubt as to the lawfulness of their presence on that evening. From all the evidence, the jury were free to infer the lawful presence of Monaco, Marks, and Pitt, if not of others as well, and no substantial risk of a miscarriage of justice arises on that score.

2. *Jury instructions.* For the first time on appeal, the defendant challenges an aspect of the judge's instructions on affray — omission of the words "lawfully there" from the judge's recitation of elements the Commonwealth must prove. We agree that the term "lawfully there" is a required element of proof of affray, and its omission from the specification of the necessary elements was error.[7] We review the error under the substantial risk of a miscarriage of justice standard. See *Commonwealth* v. *Redmond*, 53 Mass. App. Ct. 1, 6-7 (2001).

We are satisfied there is no such risk in the context of the case as tried. As just discussed, on no view of the evidence was there a reasonable doubt that the individuals placed in fear by

---

[7]The instruction followed verbatim § 6.100 of the Criminal Model Jury Instructions for Use in the District Court (2009). The model instruction includes the words "lawfully there" set forth in the definition of "affray" contained in G. L. c. 277, § 39, but omits those words from the specific elements of proof required. This omission is error, and the model jury instruction should be amended.

the fighting of the defendant and his cohort were "lawfully present" in the park. Indeed, all the evidence and reasonable inferences were that Monaco, Marks, and Pitt were lawfully present in the park, with no apparent limitation on their right or that of any members of the public to be there. See *Commonwealth v. Shea*, 398 Mass. 264, 269 (1986) (where element not contested issue at trial no substantial risk of miscarriage of justice from erroneous instruction); *Commonwealth v. Mountry*, 463 Mass. 80, 92-94 (2012).

3. *The prosecutor's closing.* There is no merit to the contention that the prosecutor's closing argument, to which no objection was lodged, misstated the evidence, sought to inflame and confuse the jury, and improperly elicited sympathy by reference to the severity of Monaco's injuries. We evaluate remarks made during closing argument in light of the entire argument, the judge's instructions to the jury, and the evidence at trial. *Commonwealth v. Coren*, 437 Mass. 723, 730-731 (2002). Viewed in that context, the challenged remarks do not amount to error, and no substantial risk of a miscarriage of justice can arise as a result.

A prosecutor is entitled to argue "forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence." *Commonwealth v. Kozec*, 399 Mass. 514, 516 (1987). Here, the prosecutor's closing was within the established rules governing the permissible boundaries of a closing argument. See *id.* at 517-518. The prosecutor emphasized that the defendant was not the individual in the white sweatshirt who assaulted Monaco outside the restaurant, and the charges at issue related solely to the defendant's attack on Monaco in the park. The prosecutor's assertion that the defendant was one of the group that kicked Monaco as he lay on the ground had a firm basis in Pitt's testimony. Similarly, her assertion that people were placed in fear by the attack of the defendant and his group of friends was a reasonable inference from the evidence, including Pitt's explanation of the need to intercede in the defendant's attack on Monaco. Nor was there anything improper in the prosecutor's highlighting that the Commonwealth had established the defendant's participation in the affray by virtue of Pitt's tackling and holding him until the police arrived. Finally, the

prosecutor's description of the severity of Monaco's injuries had obvious relevance to all the charges, including those of which the defendant was acquitted, and stood in contrast to the lack of injuries observed on the defendant, as one of the three or four precipitators of the affray.

4. *Ineffective assistance of counsel.* We have already considered, and rejected, claims that the jury instructions and the prosecutor's closing argument give rise to a substantial risk of a miscarriage of justice. The defendant fares no better by framing these claims in terms of ineffective assistance of counsel based upon defense counsel's failure to object. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 295-296 (2002) (equating ineffective assistance of counsel and substantial risk standard where waiver stems from omission by defense counsel).

5. *Unconstitutional vagueness.* There is no merit to the defendant's claim that the common-law crime of affray is unconstitutionally vague as applied to him because it does not specify with sufficient precision the kind of behavior that is criminal. See *Commonwealth* v. *Miozza*, 67 Mass. App. Ct. 567, 570-571 (2006). In particular, he argues that in its prohibition of "fighting together of two or more persons," affray makes no distinction between acting as an aggressor and acting in self-defense or defense of another. Because the defendant neither raised self-defense or defense of another as justification to any of the charges, nor preserved his as-applied challenge in his motion for required finding of not guilty, see *Commonwealth* v. *Jasmin*, 396 Mass. 653, 655 (1986), we only review for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Oakes*, 407 Mass. 92, 94-95 (1990); *Commonwealth* v. *Marshall*, 65 Mass. App. Ct. 710, 717 (2006). There is no such risk.[8]

To determine whether the crime of affray is unconstitutionally vague as applied, we view the evidence in the light most favorable to the Commonwealth. See *Commonwealth* v. *Oakes, supra* at 95. In the terms "fighting together of two or more persons," "public place," "terror," and "persons lawfully present," a person of common intelligence would have little difficulty understanding that one who was part of a group that

---

[8]Nothing in the definition of affray precludes a defendant so charged from asserting self-defense or defense of another in justification of his conduct.

engaged in a coordinated and sustained physical attack upon individuals lawfully present in a public park and caused them terror committed affray. See *Commonwealth* v. *Hendricks*, 452 Mass. 97, 102 (2008). See also *Commonwealth* v. *Rosa*, 62 Mass. App. Ct. 622, 627 (2004); *Commonwealth* v. *Miozza*, *supra.*

*Judgment affirmed.*