HOLGUIN, COMMONWEALTH vs., 101 Mass. App. Ct. 337

 
 COMMONWEALTH vs. RUBIN HOLGUIN, JR.

101 Mass. App. Ct. 337
 March 1, 2022 - June 30, 2022

Court Below: Superior Court, Essex County
Present: Milkey, Sullivan, & Ditkoff, JJ.

 

No. 20-P-579.

Rape. Evidence, First complaint. Practice, Criminal, Argument by prosecutor.

At the trial of an indictment charging aggravated rape of a child, a Superior Court judge did not abuse his discretion in admitting evidence of the victim's written and oral communications to her mother about having just been sexually assaulted by the defendant (her father), where the text messages that the victim sent asking her mother to pick her up from the location where she was staying with her father, and the subsequent in-person conversation between the victim and her mother about the rape once the mother arrived -- which were only separated by an hour -- could be considered a single, continuous first complaint. [339-341]

At a rape trial, no substantial risk of a miscarriage of justice arose from the prosecutor's closing argument, where the prosecutor was not trying to bolster the credibility of the complainant but, rather, trying to dissuade the jury from discrediting the victim based on her demeanor; and where the prosecutor's generalized statement about children, which called on the experience and common knowledge of the jury, was a fair inference that could be drawn from the evidence. [341-343] 

Indictment found and returned in the Superior Court Department on November 2, 2017. 

 The case was tried before Timothy Q. Feeley, J.

 William A. Korman for the defendant.

 Marina Moriarty, Assistant District Attorney, for the Commonwealth.

 DITKOFF, J. The defendant, Rubin Holguin, Jr., appeals from his conviction, after a Superior Court jury trial, of aggravated rape of a child, G. L. c. 265, § 23A, his ten year old daughter. The victim reported the rape to her mother in a series of text messages that prompted the mother to pick up the victim from the defendant's girlfriend's house and that continued while the mother was driving. Once the mother arrived, the victim orally confirmed what she had written. We conclude that the judge acted within his discretion in admitting evidence of these written and oral 

 Page 338 

communications as a single, continuous first complaint. Further concluding that there was no error in the prosecutor's closing argument, we affirm.

 1. Background. a. The Commonwealth's case. We briefly summarize the evidence as presented to the jury. On June 10, 2017, the defendant picked up his daughter from her mother's house in Revere and brought her to his girlfriend's house in Lawrence, where he was living. The defendant, along with the victim's half-brother A.H. [Note 1] and the victim, went to sleep in the same room, with the defendant and A.H. on the bottom bunk of a bunk bed and the victim on the top bunk.

 After the victim had fallen asleep, at around 2 A.M., she awoke to the defendant shaking her. According to the victim, the defendant kneeled on the ladder of the bunk bed with his pants pulled down, told the victim to open her mouth, rolled her over, forced her head toward him, and put his penis in her mouth. The defendant then "stopped," climbed down the ladder, and got back in bed with A.H. The victim got out of bed, grabbed her iPad, and went to the bathroom. As the victim was about to leave the bedroom, the defendant said that A.H. told him that A.H. and the victim had kissed and watched inappropriate video recordings. [Note 2]

 In the bathroom, the victim used her iPad to send a text message to her mother, explaining that she was using the iPad because the defendant had her cell phone. She asked her mother to pick her up. When the mother asked why, the victim texted the following:

"And I was half a sleep and dad said open your mouth and I said why he said because I said so. And I felled asleep and he but his private part in he mouth and when I tried to move away he push my head so I tried to push him and I want to sleep and he said that [A.H.] said we were watching a video and kissing." [Note 3]

The victim was "typing fast so [her mother] could like come, hurry, and pick [her] up." Although the iPad had the capacity to make voice calls, the victim was afraid that a voice call would wake up the defendant.

 The victim explained to her mother that the iPad's battery was 

 Page 339 

at "10%." [Note 4] The mother said that she was on her way. Although the mother did not know where the defendant's girlfriend lived, she used the "Find My Friend" function of the victim's iPad to locate the victim. She immediately began driving to Lawrence, exceeding the speed limit significantly.

 While the mother was driving to Lawrence, the victim crawled back into bed, put the blanket over herself, and continued the conversation. She texted, "I'm laying on the bed. I'm scared to move." The mother responded, "Don't worry mami is on her way." The victim later texted, "You almost here?" and then, "???" and, "Mom." The mother responded that she could not text while driving.

 When the mother arrived at the house, she contacted the victim through the iPad. At first, the victim was unable to open the exterior door to the house because it was secured by a child-proof lock, but her mother walked her through the process.

 When the victim left the building, her mother hugged her, put her in the car, and asked her, "[D]o you know what you're saying[?]" The victim responded, "Yeah. Pappi put his private part in my mouth." Approximately one hour passed between the time the victim began texting her mother and the time she arrived at her mother's car.

 b. The defendant's case. The defendant testified that, after dinner, the victim and A.H. were playing in their room, and he told them to go to sleep. At around 1 A.M., the defendant heard a stomp from the bedroom and observed that the victim was awake. He told her "to get her behind to sleep." He had never had trouble getting her to go to sleep before this. Approximately an hour later, he heard another sound and again saw the victim awake. He once again told her to go to sleep, hitting the door with his belt, and then went to sleep in the bedroom he shared with his girlfriend. When he awoke the next morning, the victim was gone. When he discovered that the victim was home after A.H. called her, he asked the victim's mother what had happened, but she refused to discuss it. He categorically denied the allegations of sexual abuse.

 2. First complaint evidence. Under the first complaint doctrine, evidence of "the very 'first' complaint is admissible" for the limited purpose of "assist[ing] the jury in determining whether to credit the complainant's testimony about the alleged sexual 

 Page 340 

assault." Commonwealth v. Cruz, 98 Mass. App. Ct. 383, 387, 389 (2020). Any "further disclosures are not admissible as first complaint evidence," Commonwealth v. Stuckich, 450 Mass. 449, 456 (2008), including "successive complaints [made] to the first complaint witness," Cruz, supra at 388, quoting Commonwealth v. Arana, 453 Mass. 214, 222-223 (2009). Where successive communications, however, are "not . . . separate complaint[s]," but rather, part of "a single, tightly intertwined oral and written communication," a judge may treat the communications taken together as the initial complaint. Commonwealth v. Revells, 78 Mass. App. Ct. 492, 496 (2010).

 Here, the judge treated the text messages and the subsequent in-person conversation between the victim and her mother as a single complaint, and admitted both in evidence. [Note 5] We "review [the judge's] determination under an abuse of discretion standard." Commonwealth v. Aviles, 461 Mass. 60, 73 (2011). Accord Commonwealth v. Rivera, 83 Mass. App. Ct. 581, 583-584 (2013). We conclude that the judge acted within his discretion.

 Several factors support the judge's determination that the communications at issue were part of a single, continuous first complaint. First, the evidence shows that the victim wanted the communication to continue and tried to remain in constant contact until her mother arrived. The evidence also supports the judge's conclusion that oral communications were not practical until the victim's mother arrived, bolstering the judge's conclusion that the in-person communication was a part of the over-all conversation. See Revells, 78 Mass. App. Ct. at 496 (letter that victim wrote when she was "unable to verbally articulate her complaint" was not separate complaint). Contrast Cruz, 98 Mass. App. Ct. at 387-388 (report made to mother in ambulance was inadmissible where victim had already reported assault to mother in building lobby).

 Furthermore, the communications were made to the same witness. Contrast Commonwealth v. Lyons, 71 Mass. App. Ct. 671, 673 (2008) (subsequent complaint to officer at scene was inadmissible, as first complaint was 911 call). They concerned the same crime. Contrast Aviles, 461 Mass. at 70 (second complaint, which was made to different family member and "pertained to a different alleged crime," was not admissible as first complaint 

 Page 341 

evidence). There was no "meaningful gap in time" between them. Revells, 78 Mass. App. Ct. at 496. Not only was the beginning of the conversation and the end separated by only one hour, contrast Rivera, 83 Mass. App. Ct. at 585 n.4, quoting Revells, supra ("one-week separation between the . . . conversations prevents the characterization of them as a single 'tightly intertwined' complaint"), but that hour merely reflected the amount of time that it took the victim's mother to drive to the victim's location, while the conversation continued intermittently. The victim did not speak to anyone other than her mother from the time that she left the bedroom to the time that her mother arrived.

 At bottom, the in-person conversation was a natural, if not inevitable, continuation of the conversation begun through text messages, not a "[r]epetition of the narrative." Stuckich, 450 Mass. at 457. Contrast Arana, 453 Mass. at 222 (testimony of "nightly" telephone calls with victim "in the days following [victim's] initial telephone call to [first complaint witness]" were inadmissible). Because the victim begged her mother to pick her up, their texts would necessarily cease -- and a face-to-face conversation begin -- once her mother arrived.

 Based on these facts, the trial judge acted within his discretion in determining that the in-person conversation "was not a separate complaint, but part and parcel of the entire communication to the mother." Revells, 78 Mass. App. Ct. at 497. "Consequently, the entire communication to the mother was the first complaint and was properly admitted 'to give the jury as complete a picture as possible of how the accusation of sexual assault first arose.'" Id. at 496, quoting Commonwealth v. King, 445 Mass. 217, 247 (2005), cert. denied, 546 U.S. 1216 (2006).

 3. Prosecutor's closing argument. The defendant challenges two portions of the prosecutor's closing argument. "Because the defendant did not object to the prosecutor's closing statement at trial, we review [any error] for a substantial risk of a miscarriage of justice." Commonwealth v. Proia, 92 Mass. App. Ct. 824, 835 (2018).

 Here, during direct examination, the victim took long pauses before, and sometimes during, her answers to questions about the incident. The prosecutor acknowledged in closing argument that "at a very specific point in her testimony she broke." The prosecutor then stated that, "it seemed that we all waited for an eternity between the time the questions were put to [the victim] about what [the defendant] did to her . . . and between the time 

 Page 342 

that she was able to muster the courage to say the words out loud to . . . a room full of strangers."

 The prosecutor was not trying "to bolster the credibility of the complainant by virtue of her willingness . . . to . . . testify," Commonwealth v. Ramos, 73 Mass. App. Ct. 824, 826 (2009), but rather to dissuade the jury from discrediting the victim based on her demeanor, see Commonwealth v. Lawton, 82 Mass. App. Ct. 528, 542 (2012), quoting Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999) ("A prosecutor can address, in a closing argument, a witness's demeanor"). Further, the challenged statement did not contain "needless hyperbole," Commonwealth v. Ahart, 464 Mass. 437, 445 (2013), or references to the "rigors of trial," Cruz, 98 Mass. App. Ct. at 392, quoting Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 180 n.7 (2008), the victim's vulnerability, or the details of the crime. Contrast Ramos, supra (argument deemed improper vouching included unnecessary references to victim's menstruation and use of sanitary pad); Commonwealth v. Hollie, 47 Mass. App. Ct. 538, 540, 542 (1999) (argument deemed improper appeal to sympathy emphasized brutality of crime and vulnerability of blind victim). Viewing the "remarks . . . in light of the entire argument," we conclude that the prosecutor's statement was not improper. Commonwealth v. Nee, 83 Mass. App. Ct. 441, 448 (2013).

 The prosecutor also did not improperly elicit sympathy from the jurors. "It is not error for a prosecutor to state that it took courage for witnesses to testify." Commonwealth v. Ridge, 455 Mass. 307, 331 (2009). The prosecutor's statement that the victim had to "muster the courage" was a reasonable inference to draw from the victim's testimony that she initially feared what would happen if the defendant learned that she reported the incident. See id. (similar statement was reasonable inference to draw from witnesses' testimony that they feared defendant). The prosecutor even cautioned the jury that "sympathy and emotions have no place in this courtroom and no place in [their] deliberations."

 The defendant also challenges, as misstatements of evidence, the prosecutor's statement that "children can sleep through anything" and that A.H. was a sound sleeper who could have slept through the assault. Regarding the comment about children generally, counsel "may call on the experience and common knowledge of the jury." Commonwealth v. Lugo, 89 Mass. App. Ct. 229, 236 (2016). Accord Commonwealth v. Berendson, 73 Mass. App. Ct. 395, 400 (2008). The specific assertion that A.H. was a heavy sleeper was supported by the evidence.

 Page 343 

 At trial, the victim testified that A.H. was a "heavy sleeper" and was difficult to wake up. A.H. testified that "small noises . . . wouldn't wake [him] up." [Note 6] A.H., by his own admission, did not awake when the victim left, despite the victim's climbing down the ladder, the defendant's talking to the victim while his head was next to A.H.'s, the victim's responding to the defendant from the doorway, the living room light's shining into the bedroom, and the victim's crying in the bathroom "[a]lmost directly behind" the bedroom, reentering the bedroom, gathering her things, climbing back onto the top bunk, climbing back down, and leaving. Accordingly, the prosecutor's statement was a "fair inference[] which can be drawn from the evidence." Commonwealth v. Childs, 94 Mass. App. Ct. 67, 76 (2018), quoting Commonwealth v. Rivera, 91 Mass. App. Ct. 796, 801 (2017). There was no error.

 Judgment affirmed. 

FOOTNOTES
[Note 1] A.H. was the defendant's son. 

[Note 2] At trial, A.H. and the victim denied doing these things. 

[Note 3] Text messages are quoted as originally spelled. 

[Note 4] The victim did not want to charge the iPad, because the charger was under the bed in which the defendant was sleeping. 

[Note 5] The defendant objected to the admission of testimony regarding the in-person conversation. 

[Note 6] A.H. said that he was not "a really heavy sleeper." In the face of conflicting testimony, the prosecutor was not required to adopt the view most favorable to the defense. Rather, "[t]he prosecutor has the right to argue inferences from the evidence favorable to [her] case." Commonwealth v. Rogers, 96 Mass. App. Ct. 781, 786 (2019), quoting Commonwealth v. Donovan, 422 Mass. 349, 357 (1996). Accord Commonwealth v. Barbosa, 477 Mass. 658, 671 (2017). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.