## COMMONWEALTH vs. JOHNNY RIVERA.

No. 11-P-1674.

Middlesex. February 6, 2013. - May 7, 2013.

Present: TRAINOR, KATZMANN, & SIKORA, JJ.

*Rape. Evidence,* First complaint, Hearsay, Medical record, Relevancy and materiality. *Practice, Criminal,* Hearsay, Subpoena. *Subpoena.*

At a rape trial, the judge did not abuse his discretion in admitting, as first complaint testimony, testimony from the victim's sister regarding the victim's disclosure to her sister of sexual assault, made one week after revealing only physical abuse [583-586]; further, while the sister's testimony exceeded the scope of the victim's testimony, complete congruence of the testimony of the victim and the first complaint witness was not required, and in the circumstances, the discrepancy would have had no influence or only slight effect on the jury [586-587].

At a rape trial, testimony about the creation of a plan to rescue the victim from the defendant did not constitute inadmissible hearsay, where the information was admitted to describe the physical ending of the relationship between the defendant and the victim, and omission of the plan would have left the jury uninformed of the reason for the arrival of the victim's family and a police officer at the victim's apartment; where the evidence of the plan was cumulative of other evidence independently admitted and properly before the jury; and where the testimony was limited to descriptions of its formation and execution, and did not include comments of the plan's participants about the truth of the victim's accusation. [587-588]

A Superior Court judge properly denied the criminal defendant's pretrial motion to subpoena the victim's treatment records from a community health center, where the defendant failed to show the specific relevance of the documents requested. [588-589]

INDICTMENT found and returned in the Superior Court Department on November 29, 2007.

A pretrial motion for the production of records was heard by *Thomas A. Connors*, J., and the case was tried before *Thomas P. Billings*, J.

*Amy M. Belger* for the defendant.

*John T. Mulcahy*, Assistant District Attorney, for the Commonwealth.

Sikora, J. A Superior Court jury convicted the defendant on one indictment charging rape, G. L. c. 265, § 22(*b*).[1] The main issue of this appeal is the admissibility of first complaint testimony in circumstances in which the alleged victim had complained initially about the defendant's physical abuse but then waited one week to complain about sexual abuse. The defendant contests also the trial judge's admission of purported hearsay evidence and a separate judge's pretrial denial of the defendant's motion to subpoena the victim's treatment records from a community health center. For the following reasons, we affirm.

*Background.* The jury heard the following testimony. The victim and the defendant began dating in October, 2006. They moved into a hotel in December, 2006, and the next month into an apartment in Melrose. The victim paid for the furnishings of the apartment and paid all of the rent. Her young son lived with the couple.

From December onward, the defendant asserted control over the victim. He took possession of her money, credit cards, identification cards, and keys. He would accompany her to the bank and force her to give him money. He took possession also of her cellular telephone and monitored her conversations by forcing her to talk on the "speaker phone."

The victim described a course of mental, verbal, physical, and sexual abuse. In February, 2007, he began to coerce sexual relations, including oral, vaginal, anal, and, on one occasion, digital penetration. The physical abuse included punching, kicking, and slapping, and resulted in bruises to her ribs, back, and head. The physical and sexual abuse continued even after the victim became pregnant in or about early May of 2007.

On May 12, the defendant agreed to travel to the victim's parents' home in Northampton for Mother's Day. The victim's mother, father, sister, sister's boyfriend, and son were present at

---

[1]The jury acquitted the defendant on three indictments charging rape, G. L. c. 265, § 22(*b*); one indictment charging assault and battery by means of a dangerous weapon upon a pregnant person, G. L. c. 265, § 15A(*c*)(ii); and two indictments charging assault and battery upon a pregnant person, G. L. c. 265, § 13A(*b*)(ii). The jury did not reach a verdict on two other indictments charging rape and one other indictment charging assault and battery by means of a dangerous weapon upon a pregnant person. The judge declared a mistrial as to those three charges.

the home. When the victim and her sister had a chance to be alone, they went into a bathroom. The victim told her sister about the physical abuse and displayed her bruises from recent beatings. The victim made no mention of sexual abuse at that time.

As a result of that conversation, the victim and her sister planned to talk on the following Wednesday, May 16, for the purpose of devising a strategy to rescue the victim from the relationship. On Wednesday, the victim and her family developed a code to trigger the rescue operation. The code would be a telephone call from her mother; the mother would state that she was taking the victim's son to the park. This message would signal to the victim that her family would come to her apartment on the following morning to take her away from the defendant.

On Friday, May 18, the victim received the coded telephone call from her mother. Several members of the victim's family and a Melrose police officer came to her apartment on the morning of Saturday, May 19. After the police officer forced the defendant to leave the apartment, the victim told her sister about the sexual abuse. At trial, the victim's sister testified as the first complaint witness.

*Analysis.* 1. *First complaint testimony.* The first complaint doctrine permits a judge to admit testimony from the recipient of a complainant's initial report of sexual assault. *Commonwealth* v. *King,* 445 Mass. 217, 218-219, 241-248 (2005), cert. denied, 546 U.S. 1216 (2006). See generally Mass. G. Evid. § 413 (2013). The first complaint witness may testify also to the circumstances surrounding the complaint, including "her observations of the complainant during the complaint; the events or conversations that culminated in the complaint; the timing of the complaint; and other relevant conditions that might help a jury assess the [complainant's] veracity . . . ." *Commonwealth* v. *King, supra* at 246. The two main goals of the first complaint doctrine are (1) to refute the stereotype that silence is evidence that the complainant lacks credibility and (2) to provide to the jury as complete an account as possible of how the accusation of sexual assault arose. *Commonwealth* v. *Aviles,* 461 Mass. 60, 72 (2011), citing *Commonwealth* v. *King, supra* at 243, 247.

We review a judge's decision to admit first complaint evidence

for abuse of discretion. *Commonwealth* v. *Aviles, supra* at 73. If the defendant objected to the admission of first complaint testimony, we must determine whether any error was prejudicial. *Commonwealth* v. *Arana,* 453 Mass. 214, 228 (2009). Therefore, we can affirm only if we are convinced "that the error did not influence the jury, or had but very slight effect . . . ." *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983). Here, the defendant preserved his objection to the first complaint testimony. He presents two principal challenges on appeal: (1) that the victim's May 12 complaint to her sister of only physical abuse should have precluded testimony about the victim's May 19 complaint of sexual abuse; and (2) that the testimony of the victim's sister exceeded the scope of the victim's testimony about the alleged sexual abuse.

a. *First complaint of sexual assault.* The defendant maintains that the judge's decision to admit the victim's sister's testimony of the victim's disclosure to her of sexual assault one week after revealing only physical abuse amounts to the admission of an improper "second complaint" or "expanded complaint." We disagree and interpret the first complaint doctrine to permit the admission of the first complaint *of sexual assault. Commonwealth* v. *King,* 445 Mass. at 243 ("that single complaint witness . . . may testify to the details of the alleged victim's first complaint *of sexual assault* . . ." [emphasis supplied]).

If a complainant delays disclosure, the defendant may still exploit the timing of the allegation, which is "simply one factor that the jury may consider in weighing the complainant's testimony."[2] *Id.* at 242. Here, the victim's decision to tell her sister first of only physical abuse falls within the category of delay; that deferral does not bar admission of her subsequent complaint of sexual abuse one week later. See *ibid.* See also *Commonwealth* v. *Murungu,* 450 Mass. 441, 445-446 (2008) (when the victim expresses to a witness unhappiness but does not actually allege a sexual assault, the encounter does not constitute a first complaint). The purpose of the first complaint rule is to mitigate the effect on the fact finder of the reluctance

---

[2]The defense counsel in this case elicited testimony from the victim's sister that the victim did not complain about sexual abuse on May 12.

Commonwealth v. Rivera.

of a victim to reveal sexual assault specifically, not physical assault generally.

The trial judge recognized this distinction during the pretrial hearing. He responded to the defense counsel's argument that the conversation in the bathroom was the victim's "opportunity" to allege sexual assault with the comment that "first complaint means first complaint about sexual abuse." The defendant's position would convert the first complaint doctrine to the first opportunity doctrine. It would effectively exclude the first complaint of sexual abuse if the complainant had made an earlier report of other abuse by the defendant to the same recipient witness. That restriction would underestimate the inherent difficulty of disclosure (such as feelings of denial, shame, or fear of publicity or of anticipated disbelief) and the unpredictable circumstantial inhibitions confronting a complainant at the moment of first opportunity (such as abusive or dependent relationships, or fear of retaliation by the perpetrator or by her own supporters).[3] Such a restriction would retreat from the purpose of the present rule, i.e., to prevent exploitation of silence or delay as an attack on the complainant's credibility. A reliable and fair concept of the first complaint rule recognizes both categories of reticence and permits the complainant adequate time and opportunity for the first disclosure of specifically sexual abuse.[4]

Finally, the admissibility of a first complaint made at a subsequent opportunity after disclosure of other abuse leaves the

_____

[3]See *Commonwealth* v. *King*, 445 Mass. at 237-238 & n.18. The defendant's argument that the setting at the family home was conducive to disclosure also fails to consider that the victim's revelation of sexual abuse — arguably more inflammatory than physical abuse — could create a dangerous atmosphere at a family function at which the defendant was present.

[4]Contrary to the Commonwealth's assertion, the one-week separation between the May 12 and May 19 conversations prevents the characterization of them as a single "tightly intertwined" complaint. Compare *Commonwealth* v. *Revells*, 78 Mass. App. Ct. 492, 496 (2010) ("the victim's first complaint . . . consisted of a single, tightly intertwined oral and written communication"). Instead, the May 19 conversation is admissible as the first complaint of sexual assault. Further, the Commonwealth made a concerted effort to limit evidence about the May 12 conversation to the victim's *display* of her bruises. The only arguable hearsay statement of the victim was that she took her sister to the bathroom "[t]o tell her what happened to me." To the extent that we could consider this generalized statement as hearsay, its admission would have had little to no influence on the jury. See *Commonwealth* v. *Flebotte*, 417 Mass. at 353.

defendant with a fair opportunity for examination and argument
to the effect that the delayed disclosure should be a less cred-
ible disclosure. Here, in closing argument, defense counsel
emphasized that the victim's failure to call the police or allege
sexual assault on May 12 created reasonable doubt of her ac-
count of abuse. The judge's instruction informed the jury that
the timing of the claimed offenses and the first complaint was
"one factor" available for their consideration of her credibility.

b. *Scope of first complaint testimony.* As a consequence of
our determination that the victim's sister was an appropriate
first complaint witness, we must consider the propriety of her
specific testimony. After the victim testified about the different
acts of forced sexual assaults, her sister testified to her recollec-
tion of the victim's complaint on May 19. However, the victim's
sister's testimony included two allegations absent from the
victim's testimony: (1) that the defendant had raped the victim
with an object; and (2) that the defendant had threatened her
with the "beating of her life" if she did not capitulate to certain
sexual acts.

We agree with the defendant that this testimony exceeded the
scope of the victim's testimony. However, we find it neither
prohibited by the case law nor harmful in the present circum-
stances. Instead, we interpret the first complaint standard to
permit some discrepancy between the testimony of the complain-
ant and the first complaint witness. The fresh complaint standard
has not required the complete congruence of the testimony of
the complainant and the complaint witness. "Fresh complaint
testimony need not replicate precisely the victim's own testimony
. . . . Some inconsistency . . . is expected, and will often aid
the jury in determining whether the fresh complaint testimony
ultimately supports the complainant's story." *Commonwealth* v.
*King*, 445 Mass. at 235.[5] The first complaint standard continues
that limited tolerance.[6] *Commonwealth* v. *Aviles*, 461 Mass. at

---

[5] Under the fresh complaint rule, the trial judge was required to exclude
testimony of the fresh complaint witness exceeding mere discrepancy and
effectively "fill[ing] in" the complainant's account. *Commonwealth* v. *King*,
*supra* at 234-235, quoting from the trial judge's instructions.

[6] The judge retains the usual discretionary authority to exclude details
absent from the complainant's testimony if their potential prejudice outweighs
their probative value. See Mass. G. Evid. § 403 (2013).

72-73 (stating that "trial judges need greater *flexibility* to deal with the myriad factual scenarios that arise in the context of purported first complaint evidence" [emphasis supplied]). See *Commonwealth* v. *Wallace*, 76 Mass. App. Ct. 411, 414-415 (2010) (victim's brother allowed to testify to the victim's account of the defendant's sexual misconduct even though the victim did not remember their conversation; the fact that the victim remembered the conversation "somewhat differently" went to the weight of the evidence, not admissibility). Further, defense counsel may exploit such discrepancies during both cross-examination and closing argument. *Commonwealth* v. *King*, 445 Mass. at 245 ("a defendant will be free to cross-examine both the first complaint witness and the complainant about the details of the complaint, and draw to the jury's attention any discrepancies in the complainant's story . . ."). See *Commonwealth* v. *Wallace*, *supra* at 415.

Finally, the judge gave limiting instructions to the jury (1) after the victim testified that she had told her sister about the sexual abuse; (2) before the first complaint witness's testimony; and (3) during his final charge before deliberations. Those instructions informed the jury that they could consider the first complaint evidence only to assess the credibility and reliability of the victim's accusations. In these circumstances, any of the sister's testimony which exceeded the scope of the victim's allegations would have had no influence or only slight effect upon the jury. See *Commonwealth* v. *Flebotte*, 417 Mass. at 353.

2. *Evidence of the rescue plan.* The defendant argues that testimony by the victim's sister and father about the creation of the rescue plan was inadmissible hearsay. We disagree for the following reasons.

Since the defendant timely objected, we review the judge's admission of the purported hearsay evidence for abuse of discretion. See *Commonwealth* v. *Ruiz*, 442 Mass. 826, 832 (2004). "Hearsay is an out-of-court statement used to prove the truth of the matter asserted." *Commonwealth* v. *Silanskas*, 433 Mass. 678, 693 (2001). See Mass. G. Evid. § 801 note, at 241-242 (2013) (evidence of statements admissible if the proponent offers them for nonhearsay purposes).

Here, the information admitted about the formation of the rescue plan did not constitute hearsay. Instead, the Commonwealth introduced the creation of the rescue operation for a nonhearsay purpose: to describe the *physical* ending of the relationship between the defendant and the victim. Omission of the plan would have left the jury uninformed of the reason for the arrival of the family and a police officer at the apartment on May 19. See *Commonwealth* v. *Miller*, 361 Mass. 644, 659 (1972) (out-of-court statements admissible to explain why the police officer approached the defendant); *Commonwealth* v. *Rosario*, 430 Mass. 505, 508-510 (1999) (same). See also *Commonwealth* v. *Perez*, 27 Mass. App. Ct. 550, 554 (1989), quoting from *Commonwealth* v. *DiStasio*, 294 Mass. 273, 287 (1936), cert. denied, 302 U.S. 683 (1937), overruled on other grounds, *Commonwealth* v. *Forde*, 392 Mass. 453, 457-458 (1984) (evidence of conversations that result in police action makes the presence of an officer "seem more natural and less mysterious"). Further, it was undisputed that members of the victim's family and a Melrose police officer arrived at the apartment of the victim and the defendant to intervene on the victim's behalf; the police officer testified to his involvement. As a result, the evidence of the plan was cumulative of other evidence independently admitted and properly before the jury.

In addition, the judge and the prosecutor instructed the witnesses not to relay other persons' comments made during the creation and execution of the plan. See *Commonwealth* v. *Rosario*, 430 Mass. at 509-510 ("Disclosure of the substance of the conversation ordinarily is not required . . ."; prejudice is less likely if the jury hears that individuals acted "as a consequence of a conversation"). Testimony about the plan described its formation and execution, and not the comments of its participants about the truth of the victim's accusation.

3. *Request to subpoena the victim's treatment records.* Before trial, the defendant attempted to subpoena the victim's treatment records from a community health center, pursuant to Mass. R.Crim.P. 17(a)(2), 378 Mass. 886 (1979).[7] As the basis of the request, he argued that the victim's failure to comply with the

---

[7] When the defendant met the victim, she was a resident of a program run by the Dimock Community Health Center for homeless women suffering from substance abuse problems, mental health issues, and HIV/AIDS.

center's rules affected her credibility, and that her mental health issues affected her ability to perceive events. The motion judge denied the request. We agree with the judge that the defendant failed to satisfy the criteria of *Commonwealth* v. *Lampron*, 441 Mass. 265, 269 (2004), and *Commonwealth* v. *Dwyer*, 448 Mass. 122, 140-141 (2006), which require a showing that the treatment records were (i) relevant; (ii) otherwise inaccessible to defense counsel in advance of trial; (iii) necessary for proper preparation by defense counsel and for prevention of delay of trial; and (iv) requested in good faith and not for a general exploratory or "fishing expedition" purpose. See Mass. G. Evid. § 1108 (2013).

Here, the essence of the defendant's request was that the relevance of the documents might generate information undermining the victim's credibility. However, as the judge found, the defense counsel failed to articulate "something more *definitive* to link the [victim]'s pre-abuse records at [the treatment center] to the issues of this case" (emphasis supplied). Likewise, the defense counsel's affidavit contained no information that the victim's mental illness affected her ability to perceive events. As a matter of law under the *Lampron* criteria, the defendant did not show the specific relevance of the documents. *Commonwealth* v. *Lampron*, *supra*. See *Commonwealth* v. *Bourgeois*, 68 Mass. App. Ct. 433, 436 (2007) ("Generalizations and unsubstantiated statements concerning a particular victim's credibility are not enough"). Consequently the motion judge's denial of the requested order of production under rule 17(a)(2) constituted neither an error of law nor an abuse of discretion.

*Judgment affirmed.*