## COMMONWEALTH *vs.* MANFRED ELANGWE.

No. 10-P-2190.

Middlesex. September 11, 2013. - April 15, 2014.

Present: KANTROWITZ, SIKORA, & HINES, JJ.

*Rape. Assault and Battery. Practice, Criminal,* New trial, Discovery, Assistance of counsel, Hearsay, Conduct of prosecutor. *Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel. *Evidence,* Exculpatory, Hearsay, Relevancy and materiality, Cross-examination, Credibility of witness, Impeachment of credibility. *Witness,* Credibility, Cross-examination.

A Superior Court properly denied the criminal defendant's motion for a new trial on indictments charging, inter alia, rape, where defense counsel could have learned prior to trial of the existence of the victim's treatment records for psychiatric injuries attributed to the rape, and where, even if such records were newly discovered, they likely would not have changed the outcome of the trial. [194-196]

At the trial of indictments charging, inter alia, rape, although counsel failed in her professional duty to the defendant when she neglected to investigate in a timely manner the possibility that the victim had filed a civil lawsuit for damages, counsel's failure did not deprive the defendant of a substantial ground of defense, where the jury were fully apprised of the existence of the civil suit and the prospect of financial gain as a source of bias in the victim; further, counsel was not ineffective in failing to seek a continuance after discovering the existence of the lawsuit, where, in the circumstances of the case, seeking such a delay likely would have been unfruitful. [196-199]

At the trial of indictments charging, inter alia, rape, counsel was not ineffective for failing to make timely objections to a police officer's testimony, where the officer's testimony regarding the defendant's demeanor during questioning was admissible, and where the defendant's question whether the victim's allegation was the product of racial animus was not necessarily prejudicial and, in any event, was admissible as a statement of a party opponent. [199]

At a criminal trial, the judge properly exercised her discretion in excluding one victim's statements to a third party, where such a statement, even if possibly admissible as probative of that victim's mental status, was hearsay and touched on irrelevant subject matter; likewise, the judge did not abuse her discretion in denying the defendant an avenue of impeachment of a second victim using a line of inquiry that did not involve the defendant; finally, the judge acted within her discretion in admitting testimony from a police officer regarding the defendant's demeanor during questioning. [199-200]

At a criminal trial involving two victims, the judge was correct to instruct the

jury that a civil lawsuit commenced by one victim could be considered only on the issue of that victim's credibility; further, the judge acted within her discretion in delaying, but not restricting, the cross-examination of a witness. [200]

At the trial of indictments charging, inter alia, rape, the record did not establish with any degree of certainty that the prosecutor had knowledge of a civil lawsuit commenced by one of the victims, and the prosecutor had no obligation to seek out this information for the benefit of the defendant; further, there was no merit to the claim that the prosecutor unfairly disparaged the civil lawsuit as a relevant factor in assessing the victim's credibility. [200-201]

INDICTMENTS found and returned in the Superior Court Department on May 26, 2005.

The cases were tried before *Sandra L. Hamlin*, J., and a motion for a new trial, filed on May 18, 2011, was considered by her.

*Jane Larmon White*, Committee for Public Counsel Services, for the defendant.

*Jessica Langsam*, Assistant District Attorney, for the Commonwealth.

HINES, J. After a jury trial in the Superior Court, the defendant, Manfred Elangwe, was convicted of rape (Mary Smith),[1] assault and battery as a lesser included offense (Susan Jones), and accosting and annoying a person of the opposite sex (Jones).[2] This is a consolidated appeal from the convictions and the denial of the defendant's motion for new trial.[3] We affirm.

*Background.* The jury reasonably could have found the following facts. The victims lived at the Hildebrand Family Self-Help Center, a shelter in Cambridge, during the summer of 2004. The shelter had one "house manager" on site at any one time. The defendant was a house manager during the victims' stay. The defendant's direct supervisor was Lorraine D'Eon, the director of program operations for the shelter.

---

[1]Pursuant to G. L. c. 265, § 24C, we use pseudonyms for the victims.

[2]The defendant was found not guilty of accosting and annoying a person of the opposite sex (Smith); assault (Smith); and assault and battery and accosting and annoying a person of the opposite sex (a third person).

[3]This appeal is from the second trial of the indictments. The first trial, before a different judge, ended in a mistrial when the jury were unable to reach verdicts on any of the offenses charged.

a. *Smith.* One day in July of 2004, after finishing her chores, Smith sat down on a sofa in the common area near where the defendant was sitting. The defendant was the only other person in the common area. The defendant suddenly approached Smith and forced her to have sexual intercourse with him on the sofa. After the defendant finished, he told Smith that no one would believe her because she was homeless. Smith discarded her clothes and did not photograph or document her injuries.

Smith then went to the residence of her children's father, Dan Emde. While there, she took a bath and used two douches that she purchased on the way.[4] Although Smith sounded upset talking to Emde, she did not tell him about the rape. Smith did not tell anyone about the rape at that time because she was afraid she would be evicted from the shelter.

A few weeks later, Smith had another encounter with the defendant that led her to believe he would once again force her to have sexual intercourse with him. As a result, Smith told a staff member about the rape. The staff member arranged a meeting with D'Eon and other shelter staff to report the incident. The police were not involved at that time but a few weeks after the meeting with the shelter staff, Smith reported the incident to the Cambridge police.

b. *Jones.* One day in August of 2003, Jones asked the defendant to borrow a screwdriver. When the defendant brought it up the stairs to her, he grabbed her upper thigh with his hands and said, "Wow. These are getting big." Jones said, "Enough," loud enough to make her daughter cry. Later that day, the defendant attempted to grab her arm as she walked past him, which prompted her to report the incident to a staff member. She too met with D'Eon and other shelter staff about the matter. Jones reported the incident to police after she saw the defendant still employed at the shelter the following weekend.

c. *Trial testimony regarding Smith's civil suit.* After Smith and Emde testified at trial, the Commonwealth stated its intention to call D'Eon as a hostile witness.[5] Defense counsel con-

---

[4]Smith and Emde both testified that their relationship had ended before the time of the incident.

[5]The judge permitted the prosecutor to do so based on D'Eon's failure, in the first trial, to follow the court's instructions regarding permissible testimony.

tacted D'Eon and arranged to meet with her, apparently for the first time, on the Friday before D'Eon's scheduled testimony on the following Monday. At that meeting, defense counsel learned that Smith had filed a civil action for damages arising from the alleged rape. Smith had brought suit against the shelter, the defendant, and the personnel agency that arranged the defendant's temporary employment at the shelter. Prior to the resumption of the trial on Monday, defense counsel checked the court docket and confirmed the existence of the civil suit. According to the docket, Smith had filed the suit on behalf of herself and her minor children within days of the completion of the first trial and approximately nine months before the start of the second trial.

Counsel, however, did not disclose this information to the judge or to the prosecutor. Despite her knowledge of the civil suit, however, she agreed to a stipulation to be read during D'Eon's testimony to the effect that the statute of limitations had passed and that no suit had been filed by any of the women who alleged sexual misconduct against the defendant.[6] Defense counsel also failed to mention the suit when the prosecutor indicated to the judge that she intended to inquire of D'Eon whether Smith had filed a civil suit. To the apparent surprise of the prosecutor, D'Eon replied affirmatively when that question was put to her. At the prosecutor's request, the judge excused the jury to pursue the matter further with counsel.

The prosecutor professed ignorance of the suit, explaining that she had asked Smith prior to the second trial whether a civil suit had been filed, and that Smith had responded that "she has no knowledge of whether or not a civil suit is pending." Defense counsel, perhaps sensing a tactical advantage in the surprise testimony, argued that the prosecutor had not done "her preparation" and that the Commonwealth should not be allowed to escape the possibly negative consequences of its late discovery. The judge delayed further examination concerning the suit until she could verify through court documents that the litigation

---

[6]We do not condone and find reprehensible defense counsel's agreement to stipulate to a fact she knew to be false.

actually was pending.[7] With confirmation that the suit was then in fact pending in the Superior Court, the judge permitted D'Eon to testify to that fact.

Neither the Commonwealth nor the defendant recalled Smith or Emde for inquiry about the pending suit. Instead, both parties relied on their closing arguments to portray the suit in the light most favorable to their position on the defendant's guilt. The defendant argued that Smith was motivated by bias, given the potential for financial gain from a conviction on the charges. In her closing, the prosecutor rebutted the suggestion of bias with reference to evidence that Smith had delayed reporting the incident and that even then, she had been reluctant to report the incident to the police.

d. *Posttrial discovery of new evidence.* After the guilty verdict, Smith's counsel in the civil suit filed documents in support of her motion for assessment of damages on a default judgment that had entered earlier against the defendant.[8] These documents consisted largely of treatment records for psychiatric injuries attributed to the rape, including posttraumatic stress disorder and depression. Of most significance to the defendant, the records also contained notations that Smith had been sexually abused in the past and that she confused these events with her allegations against the defendant. Statements by Smith to her medical and mental health providers also called into question the suggestion during the trial that she and Emde were permanently estranged, a factor relied on by the Commonwealth to bolster his credibility as a corroborating witness.

*Discussion.* A motion for new trial lies within the sound discretion of the judge, who may grant the motion only if it appears that "justice may not have been done." *Commonwealth*

---

[7] The judge's caution was due in part to D'Eon's reference to the suit as a "letter of intent."

[8] The record includes an affidavit from the defendant, filed in support of his new trial motion, attesting that he had never been served with a copy of the civil complaint. He averred that after his arrest, he had lost his job, had been forced to move from his prior address in Malden, "and [had] stayed . . . at three different addresses in Somerville." Service of the civil complaint was made on September 28, 2007, more than two years after his arraignment in Superior Court on July 28, 2005. A default judgment entered against the defendant in the civil case based on the return of service, which noted that the defendant had been served at his last and usual address in Somerville.

v. *Pring-Wilson*, 448 Mass. 718, 732 (2007), quoting from Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). "In reviewing the denial or grant of a new trial motion, we 'examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion.' " *Commonwealth* v. *Weichell*, 446 Mass. 785, 799 (2006), quoting from *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). If, as here, the motion judge also is the trial judge, we give "special deference" to her assessment of the trial record. *Grace, supra,* citing *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 543 (1971).

1. *Newly discovered evidence.* Our review of this claim is governed by the well-settled principles set forth in *Grace, supra.* The defendant "must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction." *Id.* at 305.

To meet the first prong of this test, the evidence must "have been unknown to the defendant or his counsel and not reasonably discoverable by them at the time of trial." *Id.* at 306. The defendant bears the burden of proving that reasonable pretrial diligence would not have uncovered the evidence. *Ibid.* The second prong relates to the materiality of the newly discovered evidence to the issue of the defendant's guilt. It must be "potent, pertinent, and creditworthy to fundamental issues in the case." *Commonwealth* v. *Cintron*, 435 Mass. 509, 517 (2001). The defendant must show that "there was a substantial risk that the jury would have reached a different conclusion had the 'newly discovered' evidence been admitted at trial." *Commonwealth* v. *Sleeper*, 435 Mass. 581, 607 (2002), quoting from *Commonwealth* v. *Jones*, 432 Mass. 623, 633 (2000).

Applying these principles, the judge rejected the defendant's motion for new trial on this ground. She ruled that the evidence was not newly discovered because defense counsel "could have learned of its existence prior to trial through due diligence" and that, even if newly discovered, it would not likely have changed the outcome of the trial. There was no error.

We agree that the documents filed by Smith in support of her motion for assessment of damages in the civil case cannot be the basis of the defendant's motion for new trial on the grounds

of newly discovered evidence. The timing of counsel's discovery of the civil suit (only after the second trial had commenced and just prior to D'Eon's testimony) was entirely within
the defendant's control. The defendant or his counsel easily
could have discovered it by checking publicly available court
dockets. A search would have revealed that the lawsuit was
filed in July, 2007, almost nine months prior to the start of the
second trial in April, 2008. We appreciate that the defendant
focuses more specifically on papers filed after the jury's verdict,
but the analysis is the same. Timely investigation of the public
record would have revealed not only the existence of the lawsuit
but established a foundation for discovery of the facts that later
became available only after the second trial.[9] Thus, the defendant did not meet his burden to show that "reasonable pretrial
diligence would not have uncovered the evidence." *Grace*, 397
Mass. at 306.

As to the second prong of the test, we agree with the judge's
assessment that the new details, to which the defendant now attaches so much importance, do not "cast[] real doubt on the
justice of the conviction." *Id.* at 305. The defendant argues that
the late revelation of details concerning Smith's alleged
psychiatric injuries and her relationship with Emde deprived
him of his right to confrontation of these witnesses on credibility issues central to his defense: (1) impeachment of Smith's
mental capacity to distinguish between past incidents of sexual
abuse and the incident involving the defendant; (2) motive to
lie; and (3) Emde's prior silence as a corroborating witness in
the first trial.[10] Though perhaps important to the defendant's effort to impeach Smith based on her financial motive and her
capacity to distinguish fact from fiction, the new information
does not undermine the vitality of the jury's guilty verdict.

First, the jury were made aware of the lawsuit and the likelihood that both Smith and Emde stood to gain financially from a

---

[9]We take no position on whether the defendant would have been granted
access to Smith's psychological records, see *Commonwealth* v. *Dwyer*, 448
Mass. 122, 139-147 (2006), which apparently provided the factual basis for
the defendant's newly discovered evidence claim. We note only that the denial
of a motion for discovery likely would be sufficient to establish due diligence
by the defendant in seeking access to the records.

[10]Emde testified only in the second trial.

guilty verdict. Even if the impeachment of Smith and Emde at trial on the bias issue was not as effective or potent as it might have been, that purpose was in fact accomplished. As to Smith's purported emotional issues, the documents do not suggest, as the defendant appears to assume, that her testimony was inherently unreliable on that basis. Indeed, the treatment records were not entirely favorable to the defendant where Smith's primary care physician opined that Smith's "symptoms, including the confusion and thought process [problems], began after the sexual assault."

Also, impeachment of Emde with evidence that he and Smith misrepresented the status of their relationship and that he was available but did not testify in the first trial likely would not have made a difference in the jury's guilty finding.[11] The fact that Smith and Emde maintained some semblance of a relationship did not compel the inference that they colluded on the corroboration of the rape allegation in the interest of mutual financial gain. Instead, the jury reasonably could infer that Smith and Emde, as the parents of two minor children, would be expected to sustain their relationship for the sake of the children, if not for themselves as a couple. Emde's failure to testify in the first trial, despite being present for some part of the trial, does not of itself show collusion or that his testimony at the second trial was false. While the new evidence might have added luster to the defense, it was not so fundamentally antithetical to Smith's version of the events that the jury would have been compelled to acquit the defendant.

2. *Ineffective assistance of counsel.* The defendant next argues that his counsel provided constitutionally ineffective representation during the trial in the following respects: (a) failure timely to discover Smith's civil lawsuit or effectively to exploit its impeachment value in the defense to the charges; (b) failure to make objections to improperly admitted evidence; and (c) failure to impeach Emde regarding his silence during the first trial.

---

[11]Even assuming that Smith and Emde gave false testimony concerning the status of their relationship, the documents do not support the defendant's claim that their relationship remained intact after the rape and through the second trial. The record establishes only that, a year after the incident, Smith "*currently* lives with her boyfriend, though she is in search of more permanent housing because her name is not currently on the lease" (emphasis supplied).

In the analysis of a claim of ineffective assistance of counsel, we apply the familiar standard set out in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The defendant must establish that counsel's representation fell "measurably below that which might be expected from an ordinary fallible lawyer" and that, as a result, he was deprived of an "otherwise available, substantial ground of defence." *Ibid.* As explained below, we agree that counsel's performance was inadequate in one respect but we discern no abuse of discretion in the judge's denial of the motion for a new trial on this ground. See *Commonwealth* v. *Chleikh*, 82 Mass. App. Ct. 718, 729 (2012) (affirming denial of motion for new trial because defendant was unable to demonstrate prejudice from counsel's asserted ineffective representation).

a. *Failure to discover the civil lawsuit.* Without question, trial counsel failed in her professional duty to the defendant when she neglected to investigate the possibility that Smith had filed a civil lawsuit for damages in a timely manner. See *Commonwealth* v. *Barboza*, 54 Mass. App. Ct. 99, 109-110, cert. denied, 537 U.S. 887 (2002) (noting that evidence of civil lawsuit for damages is relevant to jury's determination of bias in criminal case). Smith's allegation that the crime was committed at the shelter where she and her children resided and that the crime was committed by an employee of the shelter compelled, at the very least, an inquiry into that possibility. Counsel's neglect of the issue until her interview with D'Eon on the eve of her trial testimony hardly represented the exercise of due diligence.

The defendant also argues that counsel failed to carry out her duties competently when she neglected to seek a continuance or delay of the trial once she discovered the existence of the lawsuit. By that time, however, the damage was done[12] and it does not appear that a continuance or delay at this point in the trial would have been likely, practical, or fruitful. Because the fault for the late discovery of the civil suit lay with defense counsel, she hardly could rely on the judge's indulgence in seeking a delay to pursue a motion for discovery of any additional relevant documents. A delay was impractical as well because the protocol

---

[12]By this point in the trial, Smith and Emde already had testified. Although the impeachment option remained open, it is possible that the opportunity for maximum impact had passed once their testimony was concluded.

for discovery of the treatment records that eventually became available after the trial involves substantial procedural hurdles that could not have been overcome in short order. See *Commonwealth* v. *Dwyer*, 448 Mass. 122, 139-147 (2006).[13] As it is not clear that counsel would have accomplished anything more than she achieved in making the jury aware of the possibility of bias, a delay likely would not have been fruitful. For these reasons, we decline to fault counsel for her tactical decision not to ask for the impossible. *Commonwealth* v. *McCarthy*, 12 Mass. App. Ct. 722, 726 (1981) (tactical decision not to request continuance was not ineffective because it was not "manifestly unreasonable").

As to the second prong of the *Saferian* test, the judge properly concluded that counsel's performance, though subpar in one respect, did not deprive the defendant of a substantial ground of defense. Our discussion above of the materiality of this evidence to the issue of the defendant's guilt applies with equal force here. As the judge noted, the jury were fully apprised of the existence of the civil suit. The prospect of financial gain as a source of bias against the defendant was available to and likely considered by the jury in determining Smith's credibility.[14] Similarly, Smith's treatment records, were relevant to, but not dispositive of, her credibility. These records, noting what may be described as serious mental health issues, also linked those problems to the defendant's conduct. Thus, we conclude that although trial counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer," it did not deprive him of a substantial ground of defense, *Saferian*,

---

[13]The *Dwyer* protocol for discovery of counselling records requires "a showing that the treatment records were (i) relevant; (ii) otherwise inaccessible to defense counsel in advance of trial; (iii) necessary for proper preparation by defense counsel and for prevention of delay of trial; and (iv) requested in good faith and not for a general exploratory or 'fishing expedition' purpose." *Commonwealth* v. *Rivera*, 83 Mass. App. Ct. 581, 589 (2013), citing *Dwyer, supra* at 140-141. The process likely would have consumed weeks, if not months, rendering it an impractical option at that point to repair the damage from the late discovery.

[14]The jury found the defendant guilty only of the lesser included offense of assault and battery on the count charging indecent assault and battery against Smith, signaling that they did not indiscriminately credit Smith's trial testimony. Further, the judge instructed the jury after D'Eon's testimony and in her final instructions that the civil action could be considered as to Smith's credibility.

366 Mass. at 96, or otherwise "create a substantial risk of miscarriage of justice." *Commonwealth* v. *Oliveira*, 431 Mass. 609, 613 n.6 (2000), citing *Commonwealth* v. *Curtis*, 417 Mass. 619, 624 n.4 (1994).

b. *Evidentiary objections.* The defendant also complains that trial counsel failed to make timely objections to a police officer's testimony that the defendant seemed "angry" and "defensive" when the police interviewed him. The police officer also testified that the defendant asked during his statement if Smith was accusing him because of his race. We agree with the judge that counsel was under no obligation to object to this testimony as demeanor during police questioning is admissible. See *Commonwealth* v. *Borodine*, 371 Mass. 1, 6-7 (1976), cert. denied, 429 U.S. 1049 (1977). The defendant's question whether Smith's allegation was the product of racial animus was not necessarily prejudicial and, in any event, it was admissible as a statement of a party opponent. *Commonwealth* v. *Marshall*, 434 Mass. 358, 365 (2001). Thus, the racial content of the question, without more, did not make it inadmissible.[15]

3. *Trial rulings.* The defendant challenges a litany of trial rulings, none of which constitute error warranting a new trial. We briefly address the claims, having in mind that error is established only by an abuse of discretion. See *Commonwealth* v. *McGee*, 467 Mass. 141, 156 (2014).

a. *Evidentiary rulings.* The judge properly exercised her discretion in excluding Smith's statements to D'Eon, denying impeachment of Jones, and admitting the police officer's description of the defendant's demeanor.[16] Smith's statements to D'Eon in the interview conducted after Smith's rape report contained information about prior sexual assaults and were hearsay. *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 758 (1995). The defendant argues that these statements were probative of Smith's

---

[15]For the reasons stated in our discussion of the claim of newly discovered evidence, see part 1, *supra*, and in our discussion of the claim of ineffective assistance based on the failure to discover the civil lawsuit, see part 2.a, *supra*, we see no merit to the claim that failure to impeach Emde regarding his silence during the first trial constituted ineffective assistance of counsel.

[16]It should be noted that defense counsel agreed that Smith would not be subject to questions concerning her statement to D'Eon that she previously had been sexually assaulted.

inability to accurately perceive and articulate events. We accept that Smith's mental status is a possible avenue in the impeachment of her credibility. See *Commonwealth* v. *Polk*, 462 Mass. 23, 36-37 (2012). Nonetheless, the judge in the exercise of her discretion properly could exclude any statements to D'Eon touching on Smith's sexual history, even if the statements might have been admissible for some other purpose. See G. L. c. 233, § 21B; *Commonwealth* v. *Harris*, 443 Mass. 714, 728 (2005).

The exclusion of the defendant's proposed impeachment of Jones with evidence that her status at the shelter was tenuous after her son clogged a toilet likewise was proper. Where the Commonwealth's proffer in support of its objection to the proposed questions established that the defendant had no part in recommending or imposing any sanction on Jones, the judge acted within her discretion. The admission of the police officer's demeanor testimony was well within the judge's discretion as well. See *Borodine*, 371 Mass. at 6-7 ("The defendant's demeanor and behavior in the course of police interrogation certainly was relevant because it helped the jury in assessing the answers given").

b. *Other rulings.* We summarily reject the defendant's claim of error in other trial rulings. The judge was correct to instruct the jury that the civil lawsuit could be considered only on the issue of Smith's credibility. It was not relevant to the credibility of Jones or the other complainant. The judge's delay, rather than restriction, of the cross-examination of D'Eon was entirely within her discretion to "exercise reasonable control over the manner and order of interrogating witnesses." Mass. G. Evid. § 611 (2013). See *Commonwealth* v. *Rooney*, 365 Mass. 484, 496 (1974).

4. *Prosecutorial misconduct.* The defendant's motion for new trial on this ground hinges on two asserted missteps associated with the discovery, during the trial, of Smith's civil lawsuit against the defendant and the shelter. He claims that the prosecutor failed timely to disclose, as exculpatory evidence, the existence of Smith's civil lawsuit and that she unfairly disparaged the lawsuit as a relevant factor in assessing Smith's credibility. This conduct, the defendant argues, infringed on his constitutional right to "effective confrontation" of Smith and Emde, who was called by the Commonwealth to corroborate certain aspects of

Smith's testimony. The judge correctly denied the motion for new trial on this ground.

The prosecutor cannot be faulted for the late discovery or disclosure of Smith's civil lawsuit. First, the record does not establish with any degree of certainty that the prosecutor had knowledge of the lawsuit.[17] Second, the prosecutor was not required, as part of her discovery obligation, to seek out this information for the benefit of the defendant.[18] *Commonwealth* v. *Beal*, 429 Mass. 530, 531 (1999) (prosecutor under no duty to seek and disclose information relating to rape complainant's mental health treatment). At best, the prosecutor would have been required to disclose the existence of the lawsuit as exculpatory evidence if she became aware of it. *Commonwealth* v. *Caillot*, 454 Mass. 245, 261-262 (2009). Thus, where the prosecutor had no affirmative obligation to seek out information to which the defendant had ready and unfettered access, we reject this claim.

Finally, we address the defendant's contention that the prosecutor unfairly disparaged the civil lawsuit as a relevant factor in assessing Smith's credibility. He claims that she "argued to the jury that the testimony about the existence of a lawsuit was not credible." Having reviewed the record, we do not accept this characterization of the prosecutor's argument. She merely argued that Smith was not motivated by financial gain in coming forward with her allegations against the defendant, a point which lay at the heart of the Commonwealth's case.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[17]Although the defendant's brief suggests that the prosecutor misrepresented the existence of Smith's civil suit, he did not proffer in his motion for new trial facts that would have warranted a such a finding.

[18]Nonetheless, the prosecutor would have been prudent to press Smith for an unequivocal answer once the subject was broached. Instead, she apparently accepted Smith's response that she "ha[d] no knowledge of whether or not a civil suit is pending." The prosecutor undoubtedly was aware that the existence of such a lawsuit could be used to impeach Smith and sought the information to prepare for that eventuality. It was especially important to vet Smith's response to this question because the case against the defendant lacked compelling physical evidence and rested largely on Smith's credibility.