The defendant, Jorge Moreno, appeals from his convictions of two counts of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B, and one count of open and gross lewdness, G. L. c. 272, § 16.[2] He alleges a number of errors by the prosecutor, the trial judge, and defense counsel. For the reasons discussed below, we affirm.
Background. We summarize the facts the jury could have found, reserving certain details for discussion of specific issues. One night in November, 2011, eight year old Clair[3] told her mother that the defendant had sexually assaulted her multiple times since she was about six years old. The defendant was Clair's older sister's live-in boyfriend; he, Clair's sister, Clair, and her mother all lived together in an apartment in Chelsea along with several other family members. Clair detailed in her testimony a number of episodes in which the defendant, under a pretense of having Clair help him with something, isolated her in the apartment, exposed himself to her, and forced her to touch his exposed penis. On at least one occasion the defendant made Clair touch "[h]is private" and "showed [her] something white coming out ... of his private" that looked like milk. On another occasion, the defendant entered Clair's bedroom and took the clothes off of Clair's large, forty-inch-tall "Barbie" doll. The defendant then told Clair to lie on top of the undressed doll and kiss it, which she did for five to ten minutes before the defendant told her to stop.
Discussion. 1. Doll evidence. The bulk of the issues raised by the defendant on appeal concern the admissibility as an exhibit at trial, and role in the evidence, of the forty-inch-tall "Barbie" doll that belonged to Clair. More specifically, the defendant argues that (1) the prosecutor exhibited misconduct by introducing the doll and the trial judge erred in allowing it into evidence because it related to an uncharged prior bad act that was irrelevant and prejudicial, (2) two Commonwealth witnesses impermissibly testified about the doll, (3) trial counsel ineffectively cross-examined the mother about prior statements involving the doll, and (4) the prosecutor impermissibly included arguments about the doll in her closing. On the record before us, none of these arguments is persuasive.
Clair testified at trial that during one of the incidents of alleged abuse, the defendant took off the doll's clothes, "made [her] get on it," and told her to kiss the doll. In addition, the mother testified on cross-examination that Clair told her the defendant masturbated on the doll. Prior to trial, the trial judge addressed the doll's admissibility in response to the Commonwealth's motion in limine, and ruled on its relevance. We see no error in the judge's ruling.
Under the circumstances of this case, it was not misconduct for the Commonwealth to seek to admit the doll as an exhibit. The doll was material evidence that was relevant to the case. See Mass. G. Evid. § 401 (2018). As referenced above, Clair testified regarding the doll's use in the abuse alleged, and defense counsel elicited testimony from the mother that the child had previously told her something about the defendant masturbating on the doll.
It was also not improper for the Commonwealth to elicit testimony on the investigators' obtaining and testing of the doll. The record shows that the testing came about as a result of Clair's and her mother's references to the doll's role in the alleged abuse. Under those circumstances, it was not misconduct by the Commonwealth to seek to admit the doll or to elicit brief testimony on how the investigators obtained and tested the doll. The trial judge considered these issues prior to trial and ruled the doll evidence admissible. See Commonwealth v. Bradshaw, 385 Mass. 244, 269-270 (1982) ("The prosecution was entitled to present as full a picture as possible of the events surrounding the incident itself"). Accordingly, Detective D'Alba described obtaining the doll from the mother, and the forensic scientist testified that no seminal fluid or other forensic evidence was recovered from the doll. The prosecutor then stated in her closing that there were "plenty of reasons" why semen would not be found on the doll, which was consistent with the forensic scientist's testimony.
Therefore, we discern no judicial error, prosecutorial misconduct, or ineffectiveness by defense counsel regarding the doll. We agree with the motion judge and do not view the limited testimony regarding the doll as overreach by the Commonwealth in order to vouch for, or "create[ ] the imprimatur of official belief in the complainant." Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008). Nor was defense counsel's strategy with regard to the doll manifestly unreasonable; once the judge ruled the doll admissible, counsel took reasonable steps to limit the prejudice to the defendant.[4] Finally, because it was based on the evidence,[5] the prosecutor's statement during her closing that there were "plenty of reasons" why semen would not be found on the doll was not error.
2. Mother's testimony. The defendant next claims that the Commonwealth improperly elicited false testimony from the first complaint witness, Clair's mother. The defendant cites a number of instances of what his new trial motion labels as inconsistencies -- either between the mother's testimony at trial and her prior statements, or between the mother's and Clair's testimony with regard to certain elements of Clair's disclosure. The defendant also challenges his trial counsel's choices in his cross-examination of the mother. We examine the defendant's claim under the familiar two-prong approach set forth in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), the first of which is whether the cross-examination fell measurably below that of an ordinary fallible lawyer. We must defer to a counsel's trial strategy and tactics unless they were "manifestly unreasonable." Commonwealth v. White, 409 Mass. 266, 273 (1991).
Here, the record does not support the defendant's claim of prosecutorial misconduct or that of ineffective assistance of counsel. Rather, the record demonstrates the common occurrence that the testimony of the complainant, Clair, and the first complaint witness, her mother, was not always consistent. See Commonwealth v. King, 445 Mass. 217, 235 (2005), cert. denied, 546 U.S. 1216 (2006) ("Some inconsistency ... is expected, and will often aid the jury"). It was up to defense counsel to "exploit such discrepancies during both cross-examination and closing argument," Commonwealth v. Rivera, 83 Mass. App. Ct. 581, 587 (2013), which he undertook in a reasonable manner. Cross-examination of a first complaint witness regarding discrepancies between a complainant's testimony and the first complaint witness's is "not a manifestly unreasonable trial strategy, even where this strategy ultimately result[s] in the admission of some evidence that the jury might otherwise not have heard." Commonwealth v. Kebreau, 454 Mass. 287, 300 (2009). The weight and credibility of the witnesses' testimony are left for the jury to determine. King, supra.
Furthermore, we discern no evidentiary error, and thus no prosecutorial misconduct regarding the scope of the mother's first complaint testimony. A first complaint witness is permitted to testify to the fact of the complaint, the circumstances surrounding the making of the complaint, and the details of the complaint itself. Id. at 218-219. See Commonwealth v. Santos, 465 Mass. 689, 699-700 (2013). Here, the mother testified that Clair told her that "[the defendant] took his pants down and all of his clothes, and he forced her to touch his part until his milk came out."[6] The mother testified that Clair told her "[the defendant] had done this many times since we had lived at [their previous apartment] when I had gone to work and [Clair] had stayed with [Clair's older sister]." The mother also testified regarding the doll.[7] The mother ended her testimony by noting that the day after Clair's disclosure, the mother initially notified the school "that [Clair] was not going to go because she was ill," but she later took Clair to school and "asked to speak with a worker." This brief testimony was a natural outcome of a description of the circumstances surrounding the making of the complaint, and it does not rise to the level of inappropriate vouching for the credibility of the disclosure. See Kebreau, supra at 298 (brief mention of call to Department of Social Services did not create substantial risk of miscarriage of justice). Therefore, we conclude that the mother's testimony did not exceed the bounds of the first complaint doctrine.
3. Commonwealth's expert testimony. Finally, the defendant argues that his trial counsel also was ineffective for failing to effectively cross-examine Dr. Tishelman on the subject of delayed disclosure. He singles out trial counsel's questions to Dr. Tishelman regarding a possible relationship between puberty and sexual awareness, and the doctor's answers of strong disagreement, as evidence that trial counsel elicited damaging testimony. However, that exchange only constitutes a part of the cross-examination. Counsel also covered issues of bias, the lack of connection between delayed disclosure and the truth, the percentage of abused children who delay disclosure, and information available within school systems directed at abuse prevention and reporting. Viewed as a whole, there was nothing manifestly unreasonable about counsel's cross-examination.[8]
Judgments affirmed.
Order denying motion for new trial affirmed.

The defendant's direct appeal from his convictions was consolidated with his appeal from the denial of his motion for a new trial.

A pseudonym. See G. L. c. 265, § 24C.

For example, defense counsel pointed out that no semen was discovered on the doll during forensic testing. He also cross-examined the mother regarding inconsistencies between what Clair told her about the doll and what Clair testified to.

The forensic scientist testified that a number of factors could cause a negative test result, such as extreme temperature or the lack of "seminal fluid residue."

The defendant erroneously argues that the prosecutor promised during the motion in limine hearing that she would "stay away from any extra facts" but did not "keep her word" when she elicited this testimony from the mother at trial. However, the transcript of the motion hearing makes clear that the prosecutor was referring to the mother's claim that Clair told her that she awoke on the couch to the defendant touching her, which Clair could no longer recall.

See discussion part 1, supra.

Other points argued by the defendant that are not discussed in this decision have not been overlooked. "We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).