NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1248

COMMONWEALTH

vs.

KEVIN MURPHY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A jury in the Superior Court convicted the defendant of two counts of indecent assault and battery on a child under the age of fourteen.[1] The victim, whom we shall call "Sarah," is a relative of the defendant. On appeal, the defendant contends

---

[1] The defendant was charged with three counts of indecent assault and battery on a child under the age of fourteen, one count of aggravated rape of a child, and one count of enticing a child under the age of sixteen. The Commonwealth entered a nolle prosequi on the charge of enticing a child and the case proceeded to trial before a jury on the remaining charges in February 2020. That jury acquitted the defendant of rape and one count of indecent assault and battery and did not reach a verdict on two counts of indecent assault and battery. The judge declared a mistrial as to those two counts, and a second trial was held almost three years later in May 2023. The convictions at issue in this appeal stem from the defendant's second trial.

that the judge erred by admitting testimony that exceeded the scope of the first complaint doctrine and that the prosecutor's misstatement of the evidence in closing argument constituted prejudicial error.  We affirm.

Background.  We summarize the facts the jury reasonably could have found.  When Sarah was between eight and nine years old, she was living with her mother and two great aunts, Helen, and Celeste.[2]  She regularly visited the defendant and often stayed overnight at his home.  Sarah testified that one night she was lying in the defendant's bed when he touched her breasts and vagina with his hands and his penis.  The defendant told Sarah that what happened "was supposed to be [their] secret." On another occasion, the defendant raped Sarah by inserting his penis into her vagina.  Sarah testified that it hurt, and she was bleeding.

Sometime after the rape occurred, Sarah told Helen that the defendant had inappropriately touched her, but did not disclose that the defendant had raped her.  Sarah, who was nineteen years old at the time of trial, did not remember much of her conversation with Helen.  She recalled that the conversation took place in the kitchen, and that she had a "knot in [her]

---

[2] Because the victim and her great aunts share a last name, we refer to them by pseudonyms.

2

stomach" and felt "disgust." She also remembered that when she told Helen that the defendant had touched her breasts and vagina, Helen was shocked and rushed down the hallway to tell Sarah's mother. Sarah testified that she didn't say anything about the rape at that time because she was worried that her family would be angry with her and that she would get in trouble.

About five years later, Sarah revealed that the defendant had done more than inappropriately touch her and that he had also raped her. This disclosure followed a heated argument between Sarah and the defendant, who, at Sarah's mother's request, went to pick up Sarah, after she reportedly was about to get in a fight with some other girls. Although someone else also was in the car, Sarah did not want to leave with the defendant. At trial she acknowledged that she and the defendant screamed at one another. It was after this altercation that Sarah told her family that the defendant had raped her.

Helen, who had been designated as the Commonwealth's first complaint witness, testified about Sarah's disclosure to her. She said that she overheard Sarah saying that she was trying to do something "sneaky" by using an application on her cell phone that her mother did not approve of. Helen told Sarah that she should not keep secrets, after which Sarah told her that she and the defendant had a secret, which was that he had tried to pull

3

her legs open while she was sleeping.  Helen became upset and pressed Sarah for details, which Sarah did not provide.  Helen asked Sarah why she had not said anything earlier to which Sarah responded that she was scared and did not want to get anyone in trouble.  Helen asked Sarah specifically whether the defendant had put "his fingers or anything" in between her legs.  Sarah, who also had become upset, said that he had not.  Helen further testified that at one point the two were crying and screaming and Helen told Sarah that she would kill the defendant if he had touched her.  Helen testified that she never should have said that to Sarah and described her threat as a "big[] mistake" because she believed that Sarah "would have [come] out and told [her] sooner if [she] hadn't said that."  Helen then called Sarah's mother and told her about the allegation.  The mother arrived home within a couple of minutes and spoke with Sarah in her room.  The mother then had a telephone conversation with the defendant during which she relayed her "serious concerns" about his misconduct.  The mother testified the defendant was "very apologetic" and was "sorry for whatever [Sarah] thought happened."  The family did not report the incident to the police and instead decided that Sarah would no longer stay overnight at the defendant's house.

The defense theory was that Sarah was not credible and had accused the defendant of sexual abuse to avoid getting in

4

trouble and to "excuse her own misbehavior." The defendant testified on his own behalf and denied the allegations. The defendant's wife also testified in support of the defendant and claimed that he always slept on the couch when Sarah stayed overnight.

Discussion. a. First complaint testimony. "The first complaint doctrine permits a judge to admit testimony from the recipient of a complainant's initial report of sexual assault." Commonwealth v. Rivera, 83 Mass. App. Ct. 581, 583 (2013). The first complaint witness may testify "to the circumstances surrounding the complaint, including her observations of the complainant during the complaint; the events or conversations that culminated in the complaint; the timing of the complaint; and other relevant conditions that might help a jury assess the [complainant's] veracity" (quotation and citation omitted). Id. See Mass. G. Evid. § 413(a) (2024).

We review a judge's decision to admit first complaint evidence for abuse of discretion. Commonwealth v. Aviles, 461 Mass. 60, 73 (2011). Although the defendant did not object to Helen's testimony at trial, he now argues that portions of the testimony, which he describes in his brief as "emotionally charged exaggerations of the evidence," were inadmissible because it went beyond the proper scope of the first complaint doctrine. We agree with the defendant that Helen's testimony

5

exceeded the scope of Sarah's testimony and, in addition, her testimony was inconsistent with Sarah's in many respects. However, the challenged testimony did not "exceed[] any rational consideration of the rule," as the defendant claims. To the contrary, our cases permit some discrepancy between the testimony of the complainant and the first complaint witness. See Commonwealth v. King, 445 Mass. 217, 235 (2005) ("Fresh complaint testimony need not replicate precisely the victim's own testimony, nor must it be sanitized to match the victim's testimony exactly"); Rivera, 83 Mass. App. Ct. at 586-587 (admitting first complaint testimony that included two allegations absent from the complainant's testimony); Commonwealth v. Wallace, 76 Mass. App. Ct. 411, 414-415 (2010) (admitting more detailed first complaint testimony on defendant's sexual misconduct where complainant only remembered disclosing that "bad things" had occurred). Furthermore, we note, as we did in Rivera, supra at 587, that inconsistencies between the testimony of the first complaint witness and the victim go to weight of the evidence not its admissibility. Here, defense counsel exploited these discrepancies during cross-examination and closing argument. Lastly, the judge properly instructed the jury on the limited purpose of first complaint testimony before Helen testified and again during the final instructions to the jury. In light of these

6

circumstances, the differences between Sarah and Helen's testimony do not warrant a new trial.

b. Prosecutor's closing argument. As previously noted, Sarah's mother testified that she had a telephone conversation with the defendant, after she spoke with Sarah, during which she expressed "serious concerns" and that the defendant responded by stating he was "sorry for whatever [Sarah] thought happened." When the defendant was asked about the conversation during cross-examination, he stated that Sarah's mother asked him about an alleged touching of Sarah's chest. In her closing argument, the prosecutor referred to the conversation and stated:

> "[Sarah's mother] told you she called [the defendant] after learning this information and confronted him. [She] told him [Sarah] says you touched her breasts and her vagina, and his response was this: I'm sorry for anything she thinks happened. He didn't say I would never touch [Sarah] inappropriately; I wasn't alone with her that day. . . I'm sorry for anything she thinks happened. Would an innocent man say that?"

The Commonwealth concedes that the prosecutor misstated the evidence when she said that Sarah's mother accused the defendant of touching Sarah's vagina. The defendant objected to the comment and, therefore, we review for prejudicial error. See Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

In determining whether an error made during closing argument is prejudicial, we consider four factors: "(1) whether the defendant seasonably objected; (2) whether the error was

7

limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions." Commonwealth v. Lester, 486 Mass. 239, 248 (2020), quoting Commonwealth v. Alvarez, 480 Mass. 299, 306 (2018). As previously noted, the prosecutor misstated the evidence, and the defendant made a timely objection. In addition, because the defendant's response could reasonably be viewed as an admission, the misstatement was not limited to a collateral issue. That said, the prosecutor's error did not prejudice the defendant. The point of the prosecutor's argument was to ask the jury to draw a negative inference from the defendant's response to an allegation of sexual assault. Whether that response was prompted by an allegation of touching Sarah's chest (breasts), her vagina, or both, could not have "possibly made a difference in the jury's conclusions," particularly in view of the fact the jury was well aware that the defendant was accused of touching Sarah's breasts and vagina. Lastly, the judge's instruction to the jury that closing arguments are not evidence was sufficient to mitigate any prejudicial effect.[3] Given the error, a specific curative

---

[3] The judge stated: "More importantly, the opening statements and closing arguments of the lawyers [are] not

8

instruction might have been the better course, but defense counsel did not request one, nor did he object to the judge's general instructions.  See Lester, 486 Mass. at 248-249 ("general" instruction sufficiently mitigated error when defense counsel failed to request specific instruction and failed to object to given instruction).  We presume the jury understood and followed the judge's instruction and conclude that the error did not prejudice the defendant such that he is entitled to reversal of his convictions.  Id.

                                    Judgments affirmed.

                                    By the Court (Vuono,
                                      Englander & Hodgens, JJ.[4]),

                                    Paul Little
                                    Clerk

Entered:  January 24, 2025.

---

evidence.  They're only intended to assist you in understanding the evidence and the contentions of the parties.  My instructions and anything that I've said in passing during trial, [are] not evidence.  In your memory -- if your memory of the testimony [] differs [] from any reference to the evidence that the attorneys or I have made, you are to follow your own recollection."

    [4] The panelists are listed in order of seniority.

9